*Common Pleas of Lackawanna.*

## BAUM ET AL VS. SCHOOL DISTRICT OF CLIFTON.

### RULE FOR INJUNCTION.

1. Irregularities are to be expected, in the administration of the School laws under the present system of selecting directors. But when the irregularities are such as men of ordinary capacity make in every day life, an Injunction ought not to be allowed restraining the collection of Taxes levied for School purposes.

2. The doctrine announced in the case of Blair et. al. vs. Boggs Township School District, 7 Casey 276, followed.

Opinion by Handley P. J.

The complaint here grows out of the levy of School Taxes for the year 1879. It would seem that the Board met in June of this year and proceeded to levy, and did levy a Tax of nine mills on the assessed valuation of the Township for School purposes, and a Tax of eight mills on the assessed valuation for building purposes. Now it is alleged that this School District has all the necessary School buildings and grounds contemplated by law and has no indebtedness incurred for building purposes; that the Taxes in said District are heavy and burdensome and the building Tax of eight mills is entirely unnecessary and uncalled for, at the present time. It is further alleged that the duplicate is prepared, and that Charles Kesler has been appointed Collector, and that he is now endeavoring to collect said Tax from the plaintiff and other Taxpayers in said District. Whereupon an injunction is prayed for, to restrain the collection of said Taxes.

The School Board in a joint affidavit by way of answer, assert that the Tax levied for said Township was necessary for building purposes, and that the Board was then in debt $213,85, and that they will realize on this levy only about $302,47 and out of this fund they must make provision for twelve Scholars, not now provided for; that extensive repairs are now being made on one of the School buildings. Other affidavits were filed and read in this case, but the point of contention is fully covered by the foregoing facts.

The record of the Board read from the minute book of

the School Board shows great irregularity, but that is to be expected under our present School system. Perfect directors are not born, nor are they selected by the people as a general thing, but such as they are we have to take them as they come, and mould their officials acts so that the law may be carried out the best it can. It is conceded however that the School Tax levy is correct, but it is contended however that no Tax for building purposes can be levied under the present showing of this School Board.

After a careful examination of all the facts in the case, and the law as it has been interpreted for us by the Supreme Court we can discover no good reason why an Injunction should be allowed in this case.

We are impressed with the belief that the doctrine announced in the case of Blair et. al. vs. Boggs Township School District, 7 Casey 276, controls this case.

We must, therefore, refuse for the present the Injunction prayed for.

## NOTES OF RECENT DECISIONS IN SUPREME COURT OF PHILADELPHIA.

When there is a mutual mistake between the contracting parties to an insurance policy, parol evidence is admissible to reform the policy. The fraud or mistake of an insurance agent, committed within the scope of the powers given him by the company, will not enable the latter to avoid a policy to the injury of the insured, who innocently became a party to the contract. When an agent of the assurer has cheated the assured into signing the warranty, and paying the premium, and the policy is issued upon the false statements of the agent himself, the assured may prove the fact, and hold the principal to the contract as if he had committed the wrong. As to all preliminary negotiations, the agent acts only on behalf of the company; and a company may not escape the consequences of the fraud or mistake of the agent by inserting a stipulation in the policy that such agent shall be deemed the agent of the insured, who, at the time of applying for the policy, was ignorant of the insurer's intention so to stipulate. In the case of a *mutual* fire in-

surance company, membership dates only from the consummation of the contract.  During negotiations for insurance, a mutual company occupies no other or better position than one organized on the stock plan.—*Eilenberger vs. P.M.G. Ins, Co. of Pa.*

Bills of lading properly indorsed, are symbols of the property covered by them serving all the purposes of actual possession, and so remain until there is a valid and complete delivery of the property to some person entitled to the possession under the bill of lading.  Cotton was shipped from Galveston for Philadelphia, *via* New York, and the bills of lading therefor in the name of A., properly indorsed, forwarded together with drafts on the purchaser for the price of the cotton, to a bank in Philadelphia for collection, with directions to hold the bills of lading until payment of the drafts (this being in accordance with the terms of the sale).  The cotton was reshipped from New York, new bills of lading being issued in a new name, and was delivered at Philadelphia, by the carrier (the original bills of lading remaining in possession of the bank) to the purchaser in Phila., who obtained from B. an advance of $10,000 thereon.  In replevin by the bank against B.:— *Held*, that the delivery was unauthorized, and that the bank was entitled to recover.  When points are submitted which are irrelevant or of which there is not sufficient evidence to justify the submission, the Court may properly decline to answer them.  —*Heiskell vs. Farmers and Mechanics National Bank.*

A national bank receiving a special deposit for safekeeping without reward is not responsible for a breach of ordinary care and negligence, but is liable only for gross negligence.

The burden of proving gross negligence rests upon the plaintiff.  Gross negligence is the failure to take that care which the most inattentive person takes.  A bailee without reward transferring deposits in good faith to a place out of its own custody, considered more safe than that of the original deposit, does not thereby increase its liability.  Per GORDON, J. Bank *v.* Graham, 29 Sm.106, followed.—*First N. Bank of Allentown v. Rex.*

Damages cannot be recovered for injury to a fishery by the erection of bank and wall, under the authority of the State to keep out the overflow of water. Such damages are merely consequential, and the constitutional provision as to compensation does not apply. In a suit for damages for injury to a fishery, it is sufficient to prevent recovery to show that the fishery was worthless; it is not necessary to show its complete obliteration.—*Finicum Fishing Co. vs. Carter.*

Subsequent judgment creditors have no standing to attack a judgment on the ground of usury without proof of an intent to defraud them thereby. The mere fact that the debtor has agreed to pay more than six per cent. interest is not enough to establish such fraudulent intent, nor is the refusal of the debtor to contest the claim; the contract must be shown to have been entered into collusively, and as a scheme to hinder and delay creditors. Appeal of Second National Bank of Titusville, 4 Norris, 529; S. C., 153, followed.— *Wheelock vs. Wood.*

To entitle a wife to a decree of divorce a mensa et thoro upon the ground that she was turned out of doors, there must be proof that she was ejected by force, or was compelled to leave because of a threat to emply force and a reasonable apprehension that it would be used against her; or there must be proof of a refusal to receive her upon demand that she should be taken into her husband's home as wife, or of an emphatic refusal to allow her to remain after her return; or lastly, there must be proof of facts amounting to a justification on the part of the wife in withdrawing from the home of her husband. Abusive or profane language, occasional refusal to speak, or neglect in writing are not such indignities to the person or such cruel and barbarous treatment as are contemplated by the Act of Feb. 26, 1817.—*Sower's Appeal.*

## NATIONAL BANKS.

In *Lazear v. National Union Bank of Baltimore*, Maryland Court of Appeals, April. 1879, 8 Rep. 499, it was decided that a national bank is without authority to deal in commercial paper; it can only discount paper. The court say: "The only power to buy and sell with which national banks are clothed, is the authority given by ch. 1, § 5137, subsecs. 1, 2, 3, and 4, Bank Act, to purchase real estate for the special purposes and under the circumstances therein stated. The act plainly shows that it was the intention of Congress to so limit and restrict the national banks as to prevent them from exacting and receiving a greater rate of interest than is authorized by the laws of the State within which such institutions may be respectively located, and to prohibit them from becoming buyers and sellers of promissory notes." "While we do not mean to say that a national bank may not invest its surplus capital in notes, we are of opinion that it has no authority to use such surplus funds as may remain on hand from day to day for the purpose of buying notes. *Bank v. Pierson*, Minn. Sup. Ct., 1877; Thompson's Bank Cases, 637; S. C., 16 A. L. J. 319; *Bank v. Baldwin*, 23 Minn. 198. If any other construction were given to such a transaction as this, the intention of Congress to prohibit national banks from buying and selling notes would be entirely defeated, and those institutions would be at perfect liberty to decline making discounts for their customers, and afterward to buy up the very paper which had been offered for discount and refused, at such price as the banks might choose to give." The contrary was held, without much discussion, in *Smith v. Exchange Bank of Pittsburgh*, 26 Ohio St. 141; S. C., Thompson's Nat. Bk. Cases, 836. In *National Pemberton Bank v. Porter*, 125 Mass. 333; S. C., 28 Am. Rep. 235, it was held that a national bank having purchased a note could maintain an action on it whether authorized by law to acquire title to notes by purchase or not. This is put on the State rule that the plaintiff in such a suit need not show

or have any title or interest in the cause of action. The court refer to and distinguish the Minnesota cases, as follows: "By the law of Minnesota, no action can be maintained upon a chose in action, except by the real owner; and as will be seem by reference to those decisions respectively, the question which the court passed upon was whether the plaintiff acquired a title to the note in suit." "It appears therefore that in those cases the only question raised was the question of title to the notes in the plantiff; and that question, as we have seen, is in this Commonwealth wholly immaterial; for we have no such statute as the statute of Minnesota, requiring a suit to be brought in the name of the real owner of a chose in action, and it is the established law that the holder of a negotiable promissory note may bring suit upon it, whether in law or in fact he be or be not the real owner of it." In *First Nat Bank of Rochester v. Harris,* 108 Mass. 514; S.C., Thompson's Nat. Bk. Cases, 590, it was held that a national bank has authority to buy checks of individuals on other banks, whether payable to bearer or to order. In *Attleborough Nat. Bk. v. Rogers*, 125 Mass. 339, it was held that a national bank could not recover back purchase-money paid by it for a note, on the ground that the purchase was *ultra vircs*, but the court held that the question under discussion could not arise in the case.

## NOTES OF RECENT DECISIONS IN SUPREME COURT OF PENNSYLVANIA.

One of the conditions precedent to a valid appeal from an award of arbitrators is the *actual* payment of costs within the twenty days allowed by the Act. A record contained the entry: "March 18, 1878. Defendant appealed, made oath, paid costs to Prothonotary Kerns, to wit, $43.23, and entered into recognizance. Same day affidavit and recognizance filed with prothonotary:" *Held*, reversing the judgment of the Court below, that resort could not be had to extraneous evidence to contradict the record, and show

that the cost had been paid by check. *Held further*, that the condition of the appeal had been complied with, inasmuch as the check had been paid within the twenty days allowed by the Act. Richter v. Cummings (1 Leg. Chron. 52), Walker v. Graham (24 Sm. 35), Carr v. McGovern (16 Sm 457), and Ellison *v.* Buckley (6 Wr. 281), *distinguished.*

PER STERRETT, J. . In theory the record imports absolute verity, and as a general rule it should be so regarded in practice. GORDON, PAXSON, and WOODWARD, JJ., dissent. —*Constein vs. Rice.*

---

In Pennsylvania one partner may bind his copartner by submission to arbitration by any agreement not under seal. No particular form of words is requisite for a valid parol submission; in an action upon the award the fact of the submission must be established to the satisfaction of the jury by a preponderance of evidence. In a suit upon a parol award of arbitrators against J. and C., as partners, C. filed an affidavit of defence denying that he was J.'s partner in the transactions forming the subject of the submission, and afterwards pleaded to the same effect; C. and J. filed separate pleas of nil debit, etc. During the trial, the defendants asked leave to withdraw the plea of no partnership, and the Judge allowed this withdrawal, remarking that its effect was to admit the partnership; no exception was taken to this ruling:

*Held* (affirming the judgment of the Court below), that the pleadings, as admended, admitted the partnership.—*Ga vs. Wallman.*

---

A subscriber to the capital stock of a railroad company before letters patent had issued, gave his demand note for the $5 on each share required to be paid in by the Act of February 19, 1849, Section 1: . *Held*, That the note was not the payment contemplated by the law, and that, in the absence of active participation by the subscriber in the affairs of the company, he was not estopped from setting up the absence of such payment as a defence to an action of assumpsit brought upon his subscription. . The giving of

his note by the defendant to the commissioners upon presentation of the subscription book to him, impliedly admitted and was sufficient to establish the fact of his subscription, though his signature thereon was not proved. A subscription to the stock of a public corporation before letters patent have issued and an organization effected, must be considered absolute and unqualified. Commissioners have no right to receive conditional subscriptions. If they do, the subscription itself is valid and the condition void. —*Boyd vs. Peach Bottom Railway Co.*

A peremptory mandamus may be issued against a city treasurer to compel him to apply money in his hands, already appropriated to other uses by city councils, to the payment of overdue interest on city bonds, provided the withdrawing of the amount from the treasury will not embarrass, much less stop the wheels of the city government. A city cannot require those who present for payment coupons cut from its bonds to give the numbers of the bonds, and to give a history of their claim of title thereto. It is no defence on the part of a city treasurer, as against an attachment for not obeying a mandamus, that the amount of coupons presented was largely in excess of the amount in hand, and that, therefore, he cannot discriminate between them. A mandamus is a civil proceeding within the meaning of the Act of March 30, 1875, (P. L. 35), relating to changes of venue. Commonwealth v. Commissioners of Lancaster Co., 6 Binn. 5, distinguished.— *Williamsport vs. Commonwealth.*

Where distribution is to be made among two or more without anything to indicate the proportions in which they are to take, the presumption is that the shares are to be equal. W., by his will, devised the balance of his property to "my sister S. her lifetime, and after her death it is my desire that a part of it go to H, and his heirs." S. was W.'s heir-at-law: *Held*, that W. was presumed to know that S. was entitled to his property under the Intestate Act, and that his design was to designate some one to share it with her. *Held further*, that in the absence of any indication of the proportion in which they were to take, the shares must be equal.—*Lewis' appeal, Est. Wm. Sikes.*