## MEMPHIS & L. R. R. Co., as reorganized, *v.* DOW.[1]

*(Circuit Court, S. D. New York.* February 11, 1884.)

**1. ULTRA VIRES—RETENTION OF BENEFITS.**

A corporation cannot retain property acquired under a transaction *ultra vires*, and at the same time repudiate its obligations under the same transactions.

**2. CORPORATIONS—POWER TO CONTRACT WITH STOCKHOLDERS.**

A corporation is not precluded from contracting with its bondholders because they own all the stock.

**3. SAME—MORTGAGE OF CORPORATE FRANCHISE.**

A corporation lawfully purchasing its franchise has implied authority to mortgage it for the purchase money.

**4. SAME—CASE STATED.**

A railroad corporation organized in Arkansas issued bonds secured by trust mortgage of its franchises and other property; the mortgage was foreclosed, and a scheme of reorganization adopted, in pursuance of which the company conveyed all its property to the trustees, and the bondholders formed a new corporation, to which the franchises and other property of the old one were conveyed by the trustees. The new corporation, thus composed entirely of the original bondholders, issued its bonds to those bondholders, secured by mortgage of its franchises and other property; and the new bonds were received in lieu of the old. Afterwards portions of the stock passed into other hands. *Held,* that the bonds constituted a valid obligation, notwithstanding the stockholders of the contracting corporation were the contractees, and notwitstanding a provision in the constitution of Arkansas forbidding private corporations to issue stock or bonds except for value actually received.

[1] See 7 Sup. Ct. Rep. 482, and 20 Fed. Rep. 260, 768.

In Equity.

*Dillon & Swayne*, for plaintiff.

*Platt & Bowers*, for defendant.

WALLACE, J. The complainant's bill is filed against the trustees and holders of the mortgage bonds of the complainant for $2,600,000, and the mortgage upon its corporate franchises and property for securing the same, executed May 2, 1877, seeking to annul the bonds and mortgage, upon the ground that they were issued and executed by the complainant without corporate power in that behalf.

A brief statement of the facts relating to the creation of the mortgage bonds, their origin, consideration, and purpose, will serve to present the legal questions involved. The complainant, created under a spec'al act of the legislature of Arkansas, is a reorganized corporation which has succeeded to the property and franchises of a former corporation of the same name under the foreclosure of a mortgage of that corporation, and a conveyance under the decree of foreclosure. By the terms of that mortgage, and by the provisions of the decree of foreclosure in conformity therewith, it was provided that if the trustees named in the mortgage should be requested so to do by a majority of the holders of the bonds secured thereby they might purchase the property, and, in that case, no bondholder should have any claim to the premises or the proceeds thereof, except for his *pro rata* share, as represented in a new corporation or company to be formed, by a majority in interest of said bondholders, for the use and benefit of the holders of the mortgage bonds. The trustees purchased at the sale, and thereupon the bondholders proceeded to organize the present corporation. There was due to the holders of the old mortgage bonds $2,600,000 of principal, and $1,300,000 of unpaid interest, and the scheme of reorganization contemplated the acceptance by the bondholders of the new mortgage bonds in place of their old ones, and of the capital stock in place of their accrued and unpaid interest. Accordingly, by the terms of the reorganization agreement, the capital stock of the new corporation was fixed at $1,300,000, divided into 13,000 shares of $100 each, and was declared to be full paid; and by the same agreement the trustees who had purchased at the foreclosure sale were directed to transfer the property and franchises purchased by them to the new corporation, upon the condition, among others, that the new corporation should execute and deliver to said trustees the new mortgage bonds for $2,600,000, now sought to be set aside. Thereupon—the new corporation having agreed to accept a conveyance of the property and franchises of the old corporation, pursuant to the terms of the reorganization agreement—the trustees conveyed the same to the new corporation, the deed of conveyance reciting the conditions upon which, as trustees, for the owners of the outstanding mortgage bonds, they were authorized to make such conveyance, and further reciting the acceptance of such conditions by the new corporation. The corporation accepted this conveyance and took

possession under it.   Every certificate of shares of stock issued by it
contains a recital that the holder takes his stock subject to the mort-
gage bonds in question.   The new mortgage bonds were issued and
delivered to the trustees for the holders of the outstanding mortgage
bonds, and were distributed by the trustees, *pro rata*, to the holders
of those bonds.   The capital stock was also apportioned among the
holders of these bonds, *pro rata*, and certificates were delivered for the
shares to which each bondholder was entitled.

After the reorganized corporation had operated the railroad for
several years, and early in the year 1880, the majority of the stock
was acquired by Messrs. Margrand, Gould, and Sage, in the interest
of the St. Louis, Iron Mountain & Southern Railway Company.   The
object seems to have been to acquire control of the corporation and
subordinate its management to the interests of the Iron Mountain
company.   The parties who thus acquired control now control the
corporation, and, speaking through it, insist that the mortgage bonds,
which were the consideration of the transfer of the property to the
corporation, are void, and should be set aside.   The case, then, is
this :   The complainant is a corporation which was brought into life
by a body of creditors of a pre-existing corporation, who had suc-
ceeded to all the property thereof, and who proposed to convey such
property to the complainant upon receiving, among other considera-
tions, the mortgage bonds in suit.   The complainant assented to this
proposition, accepted a conveyance of the property, and executed its
mortgage bonds.   It asserts now that although it had power to ac-
quire the property it had no lawful power to pay for it in the terms
and manner promised.   Its contention is founded upon a section of
the charter or act of incorporation by which alone it is claimed its
power to create a mortgage is conferred, and upon a provision of the
constitution of Arkansas which limits the power of corporations of
that state in issuing bonds.   The section of the charter relied on is
section 9, which is as follows :

"The said company may at any time increase its capital to a sum sufficient
to complete the said road, and stock it with any thing necessary to give it
full operation and effect, either by opening books for new stock, or by selling
such new stock, or by borrowing money on the credit of the company, and
on the mortgage of its charter and works."

The constitutional provision is contained in article 12, and de-
clares :

"No private corporation shall issue stock or bonds except for money or
property actually received, or labor done; and all fictitious increase of stock
or indebtedness shall be void."

As the bonds and stock issued by this corporation were issued for
property actually received, viz., the said railroad and all the corporate
property, it is not obvious how this constitutional provision has any
application to the present controversy.   It is assumed in the argu-
ment of counsel for the complainant, and reiterated several times,

that the complainant received no consideration for the mortgage bonds. Upon what theory this is claimed or can be maintained is not apparent, and, indeed, is incomprehensible. The original corporation had been divested of its property by the foreclosure sale. The newly-organized corporation accepted a reconveyance upon condition of executing the new mortgage bonds to the vendors. Whether the complainant is a new corporation, or whether it is the old corporation, need not be considered, because in either view the mortgage bonds were the consideration of the conveyance.

The proposition which is advanced, that the vendors and the vendees were the same persons, and therefore there could be no contract or sale, is not even technically correct. One of the parties was the corporation; the bondholders, by their trustees, were the other parties. True, the stockholders of the corporation were also the bondholders, but the circumstance that all the stockholders of a corporation are at the same time the several owners of property, which the corporation wishes to buy, does not destroy the power of the parties to contract together. Suppose there were two corporations, each composed of the same stockholders, can it be seriously contended that one corporation could not make a contract with the other? A corporation may contract with its directors; why not with its stockholders? If the complainant ever acquired the property it was by a purchase; if it could purchase, the bondholders could sell, and the mortgage was the consideration of the purchase and sale.

The primary questions, then, are—*First*, whether, upon the purchase of property, the corporation could mortgage what it acquired to secure the purchase money; and, *second*, whether section 9 of the charter has any application to such a transaction. It is to be observed that the complainant does not question its own power to acquire the property conveyed to it. It cannot do this while it holds on to the property and seeks to remove the lien of the mortgage. If it could legitimately purchase, why could it not, like an individual purchaser, mortgage to secure the price? A corporation, in order to attain its legitimate objects, may deal precisely as can an individual who seeks to accomplish the same ends, unless it is prohibited by law to incur obligations as a borrower of money. "Corporations having the power to borrow money may mortgage their property as security. Although it was at one time a question whether express legislative consent was not required in order to authorize a mortgage of any corporate property, as, for example, in *Steiner's Appeal*, 27 Pa. St. 313, yet the rule now is that a general right to borrow money implies the power to mortgage all corporate property except franchises, unless restrained by express prohibition in the act of incorporation, or by some general statute." Green's Brice's Ultra Vires, (2d Ed.) 223, 224.

In the late case of *Philadelphia & R. R. Co.* v. *Stickler*, 21 Amer.

Law Reg. 713, the supreme court of Pennsylvania considered the question, and PAXON, J., delivering the opinion of the court, said:

"So far as the mere borrowing of money is concerned it is not necessary to look into the charter of the company for a grant of express powers. It exists by necessary implication.   *   *   *   The reason is plain. Such corporations are organized for the purposes of trade and business, and the borrowing of money and issuing obligations therefor are not only germane to the objects of their organization, but necessary to carry such objects into effect."

In *Platt* v. *Union Pac. R. Co.* 99 U. S. 48–56, Mr. Justice STRONG, speaking for the court, says:

"Railroad corporations are not usually empowered to hold lands other than those needed for roadways and stations or water privileges. But when they are authorized to acquire and hold lands separate from their roads the authority must include the ordinary incidents of ownership—*the right to sell or to mortgage.*"

The right of mortgaging follows as a necessary incident to the right of managing the business of a corporation, according to the usual methods of business men. The right of a corporation to mortgage its franchises, or the property which is essential to enable it to perform its functions, is generally denied by the authorities. But does the reason upon which this denial rests have any application to a case like the present? The foundation of the doctrine is that such a mortgage tends to defeat the purposes for which the corporation was chartered, and the implied undertaking of those who obtain the charter, to construct and maintain the public work, and exercise the franchises for the public benefit. Some judicial opinion is found to the effect that there is no good reason for denying the right to make such a mortgage without legislative consent, because the transfer of the franchise to new hands through a foreclosure is, in fact, a change no greater than may take place within the original corporation, and the public interests are as safe in such new hands as they were in those of the original corporators. *Shepley* v. *Atlantic & St. L. R. R. Co.* 55 Me. 395–407; *Kennebec & P. R. Co.* v. *Portland & K. R. Co.* 59 Me. 9–23; *Miller* v. *Rutland & W. R. Co.* 36 Vt. 452–492. Here the mortgage was executed to enable the corporation to resume the exercise of its charter powers, and fulfill the purposes for which it was originally created. No precedent has been found denying to a corporation the power to execute a mortgage of everything it acquires by a purchase, when the mortgage is a condition of making the purchase; and there seems to be no reason, in a case like the present, for denying the power when the purchase of the mortgagor includes the franchise and the whole property of the corporation.

Section 9 of the charter is not a restriction upon the implied power of the corporation to incur such obligations as are necessary to enable it to carry on its business. It is a provision which would seem to be intended to enlarge rather than to restrict the power of the cor-

poration in this regard. Its purpose is to authorize an increase of capital to an extent commensurate with the necessities of the corporation in any of the modes usually adopted by corporations for raising money—a provision which was necessary in view of section 4 of the charter, which limited the amount of increase. As a corporation has no implied authority to alter the amount of its capital stock when the charter has definitely prescribed the limit, this permission was necessary. The purchase of property by the corporation for cash or on credit is not an increase of its capital.

There is another ground, however, upon which the decision of the case may rest more satisfactorily. Assuming that the complainant transcended its charter powers in creating the mortgage bonds in question, it cannot be permitted to retain the benefits of its purchase, and at the same time repudiate its liability for the purchase price. The rule is thus stated by a recent commentator:

"The law founded on public policy requires that a contract made by a corporation in excess of its chartered powers be voidable by either party while a rescission can be effected without injustice. But after a contract of this character has been performed by either of the parties the requirements of public policy can best be satisfied by compelling the other party to make compensation for a failure to perform on his side." Morawetz, Corp. § 100.

It is to be observed that in the present case there is no express statutory or charter prohibition upon the corporation to purchase the property or mortgage it for the purchase money. At most, its acts were *ultra vires*, because outside the restricted permission of the charter. It is not necessary, therefore, to consider the distinction made by some of the adjudications between the two classes of cases. *Hitchcock* v. *Galveston*, 96 U. S. 341. The decided weight of modern authority favors the conclusion that neither party to a transaction *ultra vires* will be permitted to allege its invalidity while retaining its fruits. The question has frequently been considered in cases where a corporation, suing to recover upon a contract which has been performed on its side, is met with the defense that the contract was *ultra vires*, or prohibited by the organic law of the corporation. *Whitney Arms Co.* v. *Barlow*, 63 N. Y. 62; *Oil Creek & A. R. Co.* v. *Penn. Transp. Co.* 83 Pa. St. 160; *Bly* v. *Second Nat. Bank*, 79 Pa. St. 453; *Gold Mining Co.* v. *Nat. Bank*, 96 U. S. 640; *Nat. Bank* v. *Matthews*, 98 U. S. 621. The latter case is a forcible illustration of the rule generally adopted. There a national banking association was proceeding to enforce a deed of trust given to secure a loan on real estate made by the association in contravention of section 5136, Rev. St., prohibiting by implication such an association from loaning on real estate, and the maker of the trust deed sought to enjoin the proceeding upon that ground. The court, speaking through Mr. Justice SWAYNE, cite with approval Sedg. St. & Const. Law, 73, in which the author states that the party who has had the benefit of the agreement will not be permitted to question its validity when the ques-

tion is one of power conferred by a charter.    Another class of cases is where the corporation itself attempts to set up its own want of power, in order to defeat an agreement or transaction which is an executed one as to the other party, and from which the corporation has derived all that it was entitled to.    Such cases were *Parish* v. *Wheeler*, 22 N. Y. 494; *Bissell* v. *M. S. & N. I. R. Co.* Id. 258; *Hays* v. *Galion Gas Co.* 29 Ohio St. 330–340; *Attleborough Bank* v. *Rogers*, 125 Mass. 339; *McCluer* v. *Manchester R. Co.* 13 Gray, 124; *Bradley* v. *Ballard*, 55 Ill. 418; *Rutland & B. R. Co.* v. *Proctor*, 29 Vt. 93.    In the first of these cases the court say:

"It is now very well settled that a corporation cannot avail itself of the defense of *ultra vires* when the contract has been in good faith fully performed by the other party, and the corporation has had the full benefit of the performance and of the contract.    If an action cannot be brought directly upon the agreement, either equity will grant relief or an action in some other form will prevail.

The present case is phenomenal in the audacity of the attempt to induce a court of equity to assist a corporation in repudiating its obligations to its creditors without offering to return the property it acquired by its unauthorized contract with them.    The fundamental maxim is that he who seeks equity must do equity.    Every stockholder of the corporation when he acquired his stock took it with notice explicitly embodied in his certificate that his interest as a stockholder was subordinate to the rights of the holders of the mortgage bonds. It is now contended that if there is any obligation on the part of the corporation to pay for the property it purchased, it is not to pay what it agreed to, but to pay a less consideration, because the property was not worth the price agreed to be paid.    The court will not compel the bondholders to enter upon any such inquiry.    They are entitled to set their own value on their own property.    When the complainant offers to reconvey the property in consideration of which it created its mortgage bonds it will have taken the first step towards reaching a position which may entitle it to be heard.    It may be said, in conclusion, that there would be no difficulty, on well recognized principles, in protecting the bondholders against the destruction of their claims upon the theory of a vendor's lien for the purchase money.    The taking of a mortgage by their trustees, so far from evidencing an intention to waive the lien, is conclusive evidence to the contrary

The bill is dismissed, with costs.