GEORGE W. SMITH *vs.* THE BOARD OF WATER COMMISSIONERS OF THE CITY OF NORWICH.*

Principals are presumed to have notice of what is done and said by or to their agents when acting in relation to the subject-matter of their agency, and within the scope of an actual or apparent authority conferred upon them.

A notice officially addressed to the president of a corporation, who is also its general agent, in relation to matters under his supervision and control as such general agent, is notice to the corporation.

Where a board of water commissioners, made a corporation for the purpose of supplying a city with water, and authorized to do any acts necessary or convenient for accomplishing that purpose, agreed with *S.*, that if he would erect and keep a boarding house for their workmen they would guarantee him a specified number of boarders, it was held that the agreement, if necessary and convenient for accomplishing the purpose of the grant, was one the corporation had power to make.

ASSUMPSIT brought to the Superior Court in New London county, and tried to the jury on the general issue, before *Park, J.*

The declaration alleged " that on or about the 1st day of March, 1868, in consideration that the plaintiff, at the special instance and request of the defendants, would erect a suitable

---

* Judge PARK being disqualified in this and the two following cases, Judge PHELPS of the Superior Court sat in his place.

building on the premises of the city of Norwich, near the proposed water reservoir of said city, for the boarding of not less than one hundred men per day, and would also board said number of men daily from the time of the completion of said building to the completion of said water reservoir, for the price of four dollars and fifty cents per week for each man, they, the defendants, undertook and faithfully promised the plaintiff that they would furnish him not less than one hundred boarders daily, from the time said building should be ready for their occupation till the time of the completion of said water reservoir, and would pay him therefor the price of four dollars and fifty cents per week for the board of each man; and further promised and undertook, in consideration aforesaid, that they would not suffer any other party to maintain a boarding-house on said premises of said city, nor guarantee or pay the board of any man or men employed by them on said water reservoir who should board elsewhere than at the boarding-house of the plaintiff." The declaration then proceeded to allege a performance of the contract on the part of the plaintiff, and a breach of the same by the defendants.

The defendants were a corporation under an amendment to the charter of the city of Norwich passed in 1866. The material parts of the act are as follows:

" SEC. 4. The board of water commissioners are empowered, and it shall be their duty, to ascertain a feasible plan for the introduction and proper distribution of water into and through said city of Norwich; to employ engineers and surveyors with reference thereto, and to estimate the probable cost of carrying such plan into execution; to make conditional contracts with the proprietors of any estate, or of any franchise, right or privilege, which shall be required for the aforesaid purpose; to report their plan, estimates of expense, and resources and conditional contracts, with appropriate reasons and calculations, to the court of common council, who may approve or reject the same; and whenever any contract provisionally entered into by said board shall be ratified by the court of common council the same shall be obligatory on said city."

" SEC. 5. Whenever any plan of said board shall have been approved by said court of common council, said board shall be immediately thereupon empowered to take and hold, for and in behalf of said city, any lands or other estate necessary for the construction of any canals, aqueducts, reservoirs,. or other works for conveying or containing water, or for the erection and construction of any buildings or machinery, or for laying any pipes or conductors for conveying water into or through said city, or to secure and maintain any portion of the water works; and in general to do any other act necessary or convenient for accomplishing the purposes contemplated by this act; * * * and said board shall be regarded as a corporation for the purpose of suing and being sued."

" SEC. 8. Said commissioners may make contracts for labor and materials for the general purposes contemplated by this act, (to be binding on said city, when ratified by the court of common council), and all contracts for materials to be furnished or services to be rendered shall be in writing."

" SEC. 12. All claims against said commissioners or said city on account of said water works may be presented to said commissioners, and when approved by them shall be laid before the court of common council, who may allow the same and direct the auditor of city accounts to draw his order on the city treasurer for the amount of any such claim."

This act was amended in 1867, the part of the amendment applicable to this case being as follows:

" SEC. 2. The board of water commissioners named in said act may make contracts for labor and materials for the general purposes mentioned in said act, in such manner as they shall deem for the best interests of said city, subject to the approval of the court of common council of said city."

On the trial of the case the plaintiff offered parol evidence to prove the contract set forth in his declaration, admitting at the time that the contract had not been reduced to writing. To this evidence the defendants objected, but the court admitted it.

By the evidence thus admitted the plaintiff claimed to have

proved the contract as laid in the declaration, and that it was made on the part of the defendants by Jedediah Spalding, one of the board of water commissioners. And by the record of a vote passed by the board, at a meeting held on the 9th day of March, 1868, and admitted as evidence on the trial, the plaintiff claimed to have proved that Spalding was fully authorized by the board to make the contract. The record was in these words: "Mr. J. Spalding was appointed a committee to arrange with some party to establish a boarding-house on the reservoir grounds."

The plaintiff also claimed to have proved that the provision made by the contract for the erection of a boarding-house and the boarding of the men employed by the defendants, was necessary for the successful prosecution of the work to be done in the erection and construction of the water works.

The defendants introduced evidence to prove, and claimed to have proved, that Spalding, as their committee, was not authorized, in arranging with the plaintiff to establish a boarding-house, to make such a contract as the one in question, and especially to guarantee to him, or to contract in any form to furnish him, one hundred or any other number of boarders for any particular period ; but that the defendants orally instructed him not to contract for any specific number of boarders. It was not however claimed by the defendants that the plaintiff had any knowledge of the instructions so given to Spalding.

The plaintiff further claimed that if Spalding in making the contract exceeded his authority, his acts in that behalf were subsequently ratified by the defendants ; and to establish that claim he introduced evidence to prove, and claimed to have proved, that about two months after the erection of the boarding-house, on the 14th day of June, 1868, he addressed a written communication to Alba F. Smith, the president of the board, in his official character as such president, in which he stated the contract which Spalding had made with him substantially as set forth in the declaration, and complained that it had not been performed by the defendants, and insisted that they should perform it or take the building which he had

erected for a boarding-house, together with the furniture with which it was supplied, at their cost. And the plaintiff further claimed and offered evidence to prove that the defendants never afterwards repudiated the contract, although he continued to keep the boarding-house for a long time thereafter, and as long as the defendants required.

The defendants however claimed to have proved that Mr. Smith shortly after the receipt of the plaintiff's communication did repudiate the contract, and so informed the plaintiff; and further claimed that Mr. Smith never laid that communication before the board, or informed the members of its contents, or that he had received it; and thereupon they claimed that the contract had not been ratified by them. They further claimed to have proved that the contract had never been approved by the common council of the city of Norwich, and had never been submitted to that body for approval.

The defendants requested the court to charge the jury as follows:

1.   The contract is one which the defendants had no power to make.

2.   If they had the power, still it was required to be made in accordance with the provisions of the charter.   The charter being an act of the legislature the plaintiff was bound to take notice of its contents.   By the requirements of the act it was necessary for this contract to be in writing, and approved by the common council.

3.   The plaintiff was bound to know under what authority Mr. Spalding acted, and if he was an agent of the corporation with special and limited powers, and acting under definite instructions, then the defendants would not be bound by any contract made which was not warranted by those instructions. The plaintiff cannot recover unless he shows that the contract made was either made by the entire board by special vote, or was one made in pursuance of authority conferred by them on Spalding, or was reported by him to the board and by them ratified.

The court charged the jury as follows:

" The defendants claim that the contract set up in the

declaration is one which they had no power to make. If this claim be correct your verdict must be for the defendants. But its correctness depends upon another question, and that is whether the provision made by the contract for the erection of a boarding-house and for boarding the men employed by the defendants, was necessary for the successful prosecution of the work which was to be done by the defendants in the erection and construction of the water works. If it was, then the defendants had the power to make the contract. If it was not, they had no power to make the contract. And this is a question of fact for the determination of the jury.

"It was not necessary for the contract to be in writing, or approved by the common council.

"To entitle the plaintiff to recover, he must prove either that the contract was made by the board themselves, or by an agent of the board acting within the scope of the authority conferred upon him by the board, or that it was made by a party pretending to act for the board, and the contract was subsequently ratified by the board. If the board had made the contract directly there would be no question about it. But it was not so made; it was made by Mr. Spalding, one of the members of the board; and the question in this part of the case is, was he authorized by the board to make the contract. If he was, then it was the contract of the board; if he was not, it was not the contract of the board, and the case on this point is with the defendants. What then was Mr. Spalding's authority? By a vote passed by the board on the 9th of March, 1868, he was appointed ' a committee to arrange with some party to establish a boarding-house on the reservoir grounds.' And the plaintiff claims that he was by this vote constituted the general agent of the board, with full power to make this contract. He also claims that if under this vote Spalding was a mere special agent of the board to arrange with some party to establish a boarding-house on the reservoir grounds, he had authority as such agent to make this contract. The defendants claim that Spalding was specially instructed by the members of the board not to contract in any form for any specific number of boarders with any

party, and that therefore if he made the contract the board were not bound by it. This claim of the defendants is correct so far as the law is concerned. If Mr. Spalding was instructed by the members of the board not to make a contract for a specific number of boarders, he had no authority to make the contract in question, and if he made it, it is not binding on the defendants unless after it was made they, with full knowledge of its provisions, ratified and confirmed it. The plaintiff claims that the defendants after this contract was made, and with full knowledge of its provisions, did ratify and confirm it. He says that on the 14th of June, 1868, he sent a letter to the president of the board, directed to him in his official character, stating in substance the contract as it is set out in his declaration, and complained therein that it had been broken by the board, and insisted that they should perform it or take the building which he had erected for a boarding-house, together with the furniture, off his hands at their cost. And Mr. Smith admits that he received the letter the same day. The letter was therefore notice to the board of what the contract was, or what the plaintiff claimed it to be; and if they permitted the plaintiff to go on with the contract for several months after this notice was given, without repudiating it or disavowing the act of Spalding in making it, their conduct is evidence to the jury tending to show a ratification of the contract by the defendants; and upon this evidence and the other evidence in the case it will be for the jury to say whether the contract was ratified by the defendants or not. If it was, it is as binding on the defendants as it would have been if Mr. Spalding had been fully authorized by the board to make it."

The jury having returned a verdict for the plaintiff, the defendants moved for a new trial for error in the rulings and charge of the court.

*Halsey* and *Pratt*, in support of the motion.

1. The contract set forth in the declaration was one which the defendants had no power to make. It is a contract of guaranty. The court left it to the jury to say whether the

erection of a boarding-house was necessary for the prosecution of the work. In leaving the question to the jury in this manner the court misled them as to the claim of the defendants. The defendants claimed that the contract set forth in the declaration was one which they had no power to make; that it was not a contract for the erection of a boarding-house or for boarding men, but a contract to guarantee a certain number of boarders. A corporation must act strictly within the limits of the power granted. *Butler* v. *City of Charlestown*, 7 Gray, 12; *New York Firemen Ins. Co.* v. *Ely*, 5 Conn., 560; *Occum Co.* v. *Sprague Manufacturing Co.*, 34 id., 529.

2. The court erred in charging the jury that it was not necessary that the contract declared upon should be in writing, or approved by the common council. It was not claimed that this would be a valid contract under the original act passed in 1866. Its validity depends upon the construction given to the amendment of 1867. Both these acts, the defendants insist, require that contracts should be approved by the common council before they can be binding upon the city. It will be noticed that the defendants are a corporation for the purpose of suing and being sued, but that all valid claims against them must be paid by another corporation, the city of Norwich. To say that contracts not approved by the city (the common council being the body through which it acts) could be binding on the city, renders nugatory the approval of the common council so carefully provided for in the act and the amendment. The defendants also say that the contract set forth in the declaration was one left under the provisions of the original act, and therefore should be in writing. It was not for labor or materials, which were the only objects concerning which the requirement that they should be in writing was dispensed with by the amendment.

3. The instruction given the jury as to what constituted notice to the defendants of the contract was erroneous, as well as that portion of the charge incidental thereto on the question of ratification. The defendants offered evidence to prove as follows: 1st. That they had specially instructed Spalding not to make any such contract as is claimed. 2d.

That no notice was given to them of any such contract in their corporate capacity, only to the president of the board, who immediately repudiated any such contract, but never communicated any notice to the board.   3d. That the defendants never by any vote or official action ratified the contract. Upon these facts the court erred in charging that notice to the president was such notice to the board that their silence was a ratification.  They might well keep silence, for they were entirely ignorant of the contract.  The only one who did speak, emphatically repudiated it.   How then could their conduct be "evidence to the jury tending to show a ratification of the contract by the defendants"?   Nor was the rule of law stated correctly in regard to the effect of notice to the president of the board.  It does not appear that he was transacting the business of the board, and it has repeatedly been held that notice to an officer of a corporation under such circumstances is not notice to the corporation. *Farmers' & Citizens' Bank* v. *Payne*, 25 Conn., 444 ; *Farrell Foundry* v. *Dart*, 26 id., 376 ; *Bridgeport Savings Bank* v. *Eldredge*, 28 id., 556.

*Hovey* and *Bolles*, with whom was *Wait*, contra.

BUTLER, C. J.   We perceive no error in the charge of the court in this case.

1.   The defendants' first request involved the proposition that they had no power by their charter to make the contract. The contract was a lawful one in its nature, and capable of subserving the purposes for which the corporation was created, and therefore was apparently within the scope of the grant. No reason was assigned in the request why it was *ultra vires*, and the court might well have omitted to charge at all respecting it.   But the court did charge that if necessary for the successful prosecution of the work the board of commissioners could make it, and that was perfectly correct.

The powers given to the board by the charter were divisible into preliminary and contingent, and absolute.  By the fourth section they were authorized to ascertain the plan, make or

procure surveys, obtain estimates of probable cost, and make conditional contracts to secure rights, and report the plans, surveys, &c. to the common council. If that body approved the plans, &c., then by the fifth section the power of the board thereafter to do everything necessary and convenient to carry out and complete the general purpose according to the approved plan, was obviously to become absolute, except that by the eighth section two specified classes of contracts, viz: contracts for labor and contracts for materials to construct the work, if to be done by contract, must be ratified by the common council. A plan, surveys &c., as contemplated by the fourth section, were duly submitted to and approved by the common council, and thereupon the fifth section became operative, and the contract in question, not being a contract for labor or materials within a fair construction of the eighth section, was clearly one which, if deemed necessary in aid of the general purpose, was within the absolute power of the commissioners.

We are not able to perceive any force in the argument of the defendants that the jury were misled by the charge on this point. The request did not involve the question whether Spalding, as matter of fact, was authorized to make the contract, or any claim that in its nature it was one which the board could not legally make, but generally, whether it was within the purview of the powers conferred by the charter. Regarding the request as we think it should be regarded, if noticed at all, we think that the response of the court to it was entirely correct.

2. The instructions given in response to the second request were also correct. When the preliminary, general plan, surveys, estimates and conditional contracts contemplated by the fourth section were reported to the common council and approved, the purposes of that section were fulfilled, and the powers of the board conferred by the fifth section became, as we have said, vested and absolute. The act of 1867 changed nothing but the manner in which the two classes of contracts specified in the eighth section were to be made and ratified, and neither that act nor the provisions of the eighth section

were operative in respect to contracts of this character. The proposition involved in the second request was obviously incorrect, and the defendants have no just ground of complaint.

3.   The charge in response to the third request was favorable to the defendants.   Two facts are clearly shown by the motion ; first, that the board by a vote appointed Spalding a committee to arrange with some party to establish a boarding-house on the reservoir ground; and second, that Smith had no knowledge of the oral prohibitory instructions respecting the guaranteeing of boarders, which the defendants claim to have subsequently given Spalding.   It has not been claimed, and cannot be claimed, that the vote was not broad enough to authorize Spalding to make the contract in question.   If then Smith, acting upon the faith of the recorded vote, as presumptively he did, and without knowledge of any prohibitory instruction, as sufficiently appears, made this contract with Spalding, the defendants could not repudiate the contract without perpetrating a fraud upon Smith.   The court might so have charged, or disregarded the request.

But if that were not so, and it appeared that Spalding had not sufficient authority, the charge as to ratification was unexceptionable.   Notice to the board was not necessary.   Spalding was its agent, and if acting as to Smith within the scope of his agency, actual or apparent, the company must be presumed to have had knowledge of his acts.   Principals are always presumed to have knowledge of all the acts done or declarations made by or to their agents, when acting in relation to the subject matter of the agency, and within the scope of an actual or apparent authority conferred upon them.   The company passed a vote conferring authority upon Spalding, and never rescinded it.   Their subsequent instructions were oral, and unknown to Smith, and their agent was left with an apparent authority as broad as the vote, and they must be presumed to have had knowledge of all his acts within its apparent scope.

But assuming that actual knowledge was necessary to the implied ratification, such knowledge was conveyed to them by the letter of the plaintiff to their president.   By the eleventh section of the charter it is provided that the board " shall

elect a president to be approved by the common council, who shall devote his whole time and attention to the construction, supervision, care and management of the water works, under the general supervision and advice of the commissioners" &c. It appears from this that the president was not only the ordinary organ of the board, through whom they might be legally addressed, but their general agent. Notice in writing to such an officer addressed to him officially as such, and received by him, especially of matters under his cognizance and control as general agent, is notice to the corporation, and the parties sending it may presume, and act upon the presumption until otherwise informed, that the contents have been made known to the corporators. There was no error in the charge upon that part of the third request.

For these reasons a new trial is not advised.

In this opinion the other judges concurred.