JAMES L. ARNOTT *vs.* THE STANDARD ASSOCIATION.

Hartford Dist., May T., 1888.  PARK, C. J., CARPENTER, PARDEE, LOOMIS and BEARDSLEY, Js.

Gen. Statutes, § 1116, provides that in every action for a libel the defendant "may give proof of intention," and unless the plaintiff shall prove malice in fact or a refusal to retract upon request, he shall recover nothing but such actual damage as he may have specially alleged and proved. This statute was intended to allow a defendant to prove in justification that the publication was intended merely as an item of news or of fair and just criticism upon men and measures or of comment upon matters of public interest; and if he could make such proof it would rebut the presumption of malice raised by the law from the false character of the publication and put on the plaintiff the burden of proving by other evidence an improper and unjustifiable motive.

The defendant had used the following language in a newspaper article:— "Mr. E. might indorse a partisan, but he would not knowingly indorse a thief, a jail-bird, or a sneak like Arnott," (the plaintiff.) Held that, under this statute, as tending to prove the absence of malice, but not for the purpose of construing or modifying the language, the defendant might be allowed to testify that he did not intend to charge the plaintiff with being a thief or a jail-bird, and that he was made to say so by a mistake in the punctuation.

Also that, for the purpose of proving the absence of malice, the defendant might be allowed to read to the jury a previous publication in another

newspaper, which came to his knowledge before the libelous article was written, stating facts with regard to the plaintiff which warranted the application to him of the term "sneak."

And held that the defendant might be allowed to disavow the epithets "thief" and "jail-bird" and to justify the use of the epithet "sneak."

The question of fact, whether the words as punctuated and published charged the plaintiff with being a thief, was solely for the jury; the words to be interpreted according to the common understanding, and not at all by the actual intention of the author.

[Argued May 15th—decided July 20th, 1888.]

ACTION for a libel; brought to the Superior Court in Hartford County and tried to the jury before *Torrance, J.* Verdict for the defendant, and appeal by the plaintiff for error in the rulings of the court. The case is fully stated in the opinion.

*W. C. Case* and *D. L. Aberdein*, for the appellant.

1. This is an action for libel, and the libelous matter complained of is contained in the following sentence. "Mr. Eaton might indorse a partisan, and he would be more likely to do so than not, but he would not knowingly indorse a thief, a jail-bird or a sneak like Arnott." The Arnott spoken of is admitted to be the plaintiff. The plaintiff complains of this sentence, because he says that persons of ordinary intelligence, reading the article in the ordinary way in which newspapers are read, would naturally believe that the writer meant to apply all the epithets used to the Arnott named. If he is right in this claim, then the writer is responsible for this application of the epithets by the reader, no matter what may have been his undisclosed intent in his use of the language, and no matter even if the reader's application is erroneous when tested by the nicer rules of grammatical construction. *Rodgers* v. *Kline*, 56 Miss., 808; *Sternau* v. *Marx*, 58 Ala., 608; Townsend on Slander & Libel, § 139; Odgers on Libel & Slander, 107. The defendant admitted that the words "thief and jail-bird" were libelous if applied to Arnott, but insisted that such application would do violence to his language. And so it became at the start the all important question in the case—what

construction would casual readers put upon this sentence? Would they believe the writer meant Arnott by all these epithets? Or would they see, without explanation and study, that the writer meant only to charge Arnott with being a sneak? These questions could be determined only by inspection of the article itself. They were questions to be determined by the unaided intelligence of the jurors. They could say how the language in question would strike the public mind, only by saying how it struck their own minds. " What meaning the speaker intended to convey is immaterial in all actions of defamation. He may have spoken without any intention of injuring the plaintiff's reputation ; but if he has in fact done so, he must compensate the plaintiff. He may have meant one thing and said another, if so, he is answerable for so inadequately expressing his meaning. Or he may have used ambiguous language which to his mind was harmless, but to which the bystanders attributed a most injurious meaning ; if so, he is liable for the injudicious phrase he selected. What was passing in his own mind is immaterial, save in so far as his hearers could perceive it at the time. Words cannot be construed according to the secret intent of the speaker. * * * The question is always : How would ordinary Englishmen, previously unacquainted with the matter, fairly understand the words ? We must assume that they give to ordinary English words their ordinary English meaning, to local or technical phrases their local and technical meaning. That being done, what meaning would the whole passage convey to an unbiased mind ? " Odgers on Libel & Slander, 93. But the defendant was unwilling to trust the construction of his language to the jury—to trust it without explanation " to an unbiased mind," and so his counsel asked the writer what his, the writer's, " secret intent " was as to the application of these epithets. He asked this question : " In this article did you intend to charge Mr. Arnott with being a thief or a jail-bird ? " This question was admitted, and the writer said " I did not." The court based the admissibility of this question upon the statute, which is as follows :—" In

every action for a libel, the defendant may give proof of
intention; and unless the plaintiff shall prove either malice
in fact, or that the defendant, after having been requested
by him in writing to retract the libelous charge in as public
a manner as that in which it was made, failed to do so within
a reasonable time, he shall recover nothing but such actual
damage as he may have specially alleged and proved." Gen.
Statutes, § 1116. This ruling we respectfully submit involves
a misconception of the purpose of the statute and is clearly
wrong. This court has fully explained what the legislature
meant in saying that the defendant may give proof of inten-
tion. *Hotchkiss* v. *Porter*, 30 Conn., 414. If a newspaper
writer says " John Smith is a thief," the law permits him,
for the purpose of disproving actual malice, to say why he
called John Smith a thief; that he published the statement
innocently as an item of current news; that he copied it from
some other newspaper believing it to be true; but can it be
seriously contended that he may defend himself by saying
he did not mean that John Smith was a thief? It is a novel
proposition that a man may avoid the consequences of his
libelous language by saying he did not intend the plain and
obvious meaning of that language. But the court said, "he
is entitled to say what his intention was, but not as con-
struing the language or modifying it in any way." What
were the jury to understand by this? For what purpose
was it admitted if not for the purpose of aiding the jury to
construe the language by the light of the writer's explanation.
What other purpose could it serve? This evidence of inten-
tion indorsed by the court and impossible of contradiction by
the plaintiff, must serve some purpose and accomplish some
result in the minds of the jury, if they pay any attention to
it. It was not even limited by the court to the office of miti-
gating damages. The court utterly failed to indicate what the
jury were to do with it. It was the defendant's statement
of how his language ought to be construed. To properly
construe this language the juror must put himself in the
place of the casual reader; he must know nothing of the
"secret intent" of the writer; he must bring to his task an

unbiased mind. All this the ruling of the court made impossible and the result could not fail to be injurious to the plaintiff.

2. Having permitted the defendant to disavow any intention of calling Arnott a "thief and jail-bird" by using those epithets in connection with his name, the court further erred in holding that the word "sneak" was a distinct and severable part of the libel. This, too, was a question of fact— a question of construction to be settled by the jury as a question of fact entirely within their own exclusive domain. The plaintiff claimed that the entire language must be taken by the jury, and that they must say whether the epithets were severable as a matter of construction; that the defendant could not by his simple disavowal settle the question of construction as to the first two epithets and then proceed to justify the use of the remaining epithet. Odgers on Libel & Slander, 169. But the court overruled this claim and told the jury, in effect, that the defendant might first disavow any intention to apply the words "thief and jail-bird" to the plaintiff. If they believed this disavowal (and they were at liberty to; it was not contradicted, and could not be), then that settled the question as to those words, and the defendant might then proceed to dispose of the remaining epithet by justifying its use.

3. The court erred in permitting the introduction of the newspaper articles which were read. It does not appear that these articles had ever been seen by the writer of the libelous article before that article was written. They were not introduced for the purpose of mitigating damages, but to show intent and want of malice. For this purpose they were clearly inadmissible. *Lothrop* v. *Adams*, 133 Mass., 471; *Hatfield* v. *Lasher*, 81 N. York, 246; *Kinney* v. *Roberts*, 33 N. Y. Supreme Ct. R., 170.

*A. P. Hyde* and *J. P. Andrews*, for the appellee.

PARDEE, J. The plaintiff was an unsuccessful applicant for the office of postmaster. Mr. W. W. Eaton opposed his ap-

pointment. Concerning the matter the defendant published, in a newspaper called the *Bridgeport Daily Standard*, the following words : " Mr. Eaton might endorse a partisan and would be more likely to do so than not, but he would not knowingly endorse a thief, a jail-bird or a sneak like Arnott." The defendant admitted the publication ; also that the plaintiff was the Arnott referred to ; also that there was no reason for the application of either of the epithets " thief " or " jail-bird " to him : and denied that there was any such application either in fact or intent; insisting that every person of ordinary intelligence would understand that these were applied to some unnamed persons, and that only the epithet " sneak " was applied to him ; justifying this last.

Upon the trial to the jury, notwithstanding the plaintiff's objection, the court, as tending to prove the absence of malice, but not for the purpose of construing or modifying the language, allowed the author of the publication to testify that he did not therein intend to charge the plaintiff with being either a " thief " or a " jail-bird "; also, allowed the defendant to disavow these epithets and prove the truth of the epithet " sneak " ; also, as tending to prove absence of malice allowed the defendant to read to the jury the following publication made in the *Springfield Republican*, a daily paper published in Springfield, Massachusetts, prior to the publication by the defendant of the words complained of, namely :—" The democrats think they have virtually 'fixed' Arnott's post office aspirations. Elam O. French was sent to Washington to urge the charges against Arnott. Dr. Pease is with him, and both men are quite harmonious in their effort to defeat the nominee. Thirteen specific charges of dishonesty in politics are made against him. It is not denied now, that since 1872 his expenses have been paid by the republican party while he came home and voted the democratic ticket, when he voted any. This piece of news came like a thunderbolt upon his republican backers." Two other articles of like character from the same paper, both published before the libelous article was written, were also read to the jury by the defendant. The writer of the

libelous article had previously mentioned the *Hartford Times*, *New Haven Palladium* and, as we understand the finding, the *Springfield Republican*, or articles taken from it, as sources of his information. The defendant had a verdict; the plaintiff appeals.

The statute (Gen. Statutes, § 1116) provides as follows:— "In every action for a libel the defendant may give proof of intention; and unless the plaintiff shall prove either malice in fact . . . . . he shall recover nothing but such actual damage as he may have specially alleged and proved."

At common law it is in some cases the right of the defendant in an action for libel, under proper pleadings, to prove his intention, for the purpose of rebutting wholly or in some measure the malice presumed by law or attempted to be proven. For instance, under the general issue, the defendant might prove in justification that the publication was a privileged communication, and such facts and circumstances so closely attending the speaking or the publishing as to prove the intent.

In other cases the defendant could prove his intention only in mitigation of damages; as that the libel was printed by mistake which was forthwith corrected; or that he published what others had previously published believing it to be true.

The cited statute was doubtless enacted in the interest of publishers of newspapers. It intended to furnish them a measure of protection in the publication of current news, criticisms upon public men and measures, and comments upon matters of public interest. It placed such publications upon the same plane with privileged communications in this respect, that under proper pleadings the defendant was allowed to prove, in justification, that the publication was intended merely as an item of news, or of fair and just criticism upon men and measures; and if he could make such proof, it should rebut the presumption of malice raised by the law from the publication of a false and defamatory article, and put upon the plaintiff the burthen of proving

by other and additional evidence an improper and unjustifiable motive.

We think that the interpretation put upon this statute in *Moore* v. *Stevenson*, 27 Conn., 14, permitting the defendant in an action for libel to prove in justification that his intention in publishing what he admits to be a libel was merely to give what he supposed to be current news or make what he supposed to be a just and fair criticism upon the conduct of the plaintiff, will also include permission to prove for the same purpose that he had never heard any person call the plaintiff a thief, that he had never thought nor intended to say that he was one; and that he had only been made to say what was not in his mind by a mistake in punctuation. Honest mistakes in punctuation, in believing and republishing what has been previously published, and in criticism, are all and equally within the protection of the statute. Damages are to be graduated by the degree to which the motive is unjustifiable and improper.

The question of fact, whether the words as punctuated and published do or do not charge theft, remains solely for the jury; the words to be interpreted according to the common understanding and not at all by the intent of the author. He in fact, while saying one thing, may have intended to say another and a different one; but that which was said must stand, in preference to that which, although intended, was not said. It was the right of the defendant to plead and prove that the publication did not charge the plaintiff with being either a "thief" or a "jail-bird" and did charge him with being a "sneak"; also to assume that the verdict might be in accordance with this plea and proceeded to complete its defense by justifying the last epithet.

For the purpose of proving the absence of an unjustifiable and improper motive in writing and publishing the article complained of, the defendant was permitted to prove that the author derived his information from articles in several newspapers. Three articles from one of them were read to the jury. There was no error in this. The cited statute permits the defendant to prove that, before the publication

complained of was made, the information therein contained had, to his knowledge at the time, become the property of the public by means of publication in other newspapers.

The counsel for the plaintiff in their brief claim that the articles read to the jury had not been seen by the writer of the libelous article. Of course if it were so their publication could not have affected his intention in writing the article in question. But this question seems to be disposed of by the finding, which we interpret as saying that, in answer to the question from what sources he derived his information, the witness included the *Springfield Republican* with the other papers named, and read the articles in question to the jury as being the ones which he had read from that paper or from other papers which had copied them.

If however we are wrong in our interpretation of the finding, the plaintiff is still without cause of complaint. He alleged that the defendant had published of and concerning him that he was a thief and jail-bird. The defendant denied such publication of or concerning him. This was an issue for the jury. The plaintiff claimed it to be so and the court submitted it to them. The verdict finds all the issues for the defendant. That verdict is conclusive so far as any question before this court is concerned. Therefore all evidence as to malice or intention ceases to be of any importance.

There is no error in the rulings complained of.

In this opinion the other judges concurred.