JOHN F. LANE, ADMINISTRATOR, *vs.* THE UNITED ELECTRIC LIGHT AND WATER COMPANY.

Third Judicial District, Bridgeport, October Term, 1914.
PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

As a well-established general rule, notice to or knowledge of an agent, while acting within the scope of his authority and with reference to a matter embraced therein, is notice to or knowledge of the principal.

Where this relation exists, it matters not that the agent is but an employee rather than an officer of the corporate principal; for the test to be applied does not look to rank or title, but to the duties assigned and to the authority and obligations which accompany such assignment.

In the present case it became a material question whether the defendant corporation, which lighted the streets of the city of Waterbury with electricity, had knowledge that the policemen of the city, when they discovered an unlighted street lamp, were accustomed to take hold of the weight or iron cable to which the lamp was attached and give it a shake or two, or tap it with their clubs, in order to cause the lamp to relight, as it usually did when so treated. *Held* that knowledge of this custom by an employee of the defend-

Lane *v.* United Electric Light & Water Co.

ant whose duty it was to trim and care for the lamps at night and to receive reports if they were unlighted, was knowledge of the defendant itself; and therefore the exclusion of evidence tending to prove the knowledge of such employee was prejudicial to the plaintiff.

Argued November 4th—decided December 2d, 1914.

ACTION to recover damages for personal injuries resulting in the immediate death of the plaintiff's intestate and alleged to have been caused by the defendant's negligence, brought to the Superior Court in New Haven County and tried to the jury before *Williams, J.;* verdict and judgment for the defendant, and appeal by the plaintiff. *Error and new trial ordered.*

The plaintiff's intestate met his death while engaged in the service of the city of Waterbury as a policeman. His duties as policeman, as defined by the regulations, included the noting and reporting of all street lamps not lighted at the proper time, or too early extinguished, or not properly cleaned, or insufficient in the volume of light given out.

The defendant was engaged in supplying its customers within the city with electricity, and in providing electric lighting for the city streets. In the course of its business it maintained a pole for street lighting at the corner of Cook and Grove streets. This pole was equipped with an extension-arm, by means of which the lamp was suspended over the middle of the street. Attached to the top of the lamp was an iron cable, which passed over a pulley at the outer end of the extension-arm, thence in line with the arm to the pole, and thence over another pulley and down the side of the pole to an iron counterweight at its end. This counterweight was held in place, when the lamp was in position for use, by a hook caught over a bolt attached to the pole. When it was desired to lower the lamp to be trimmed or otherwise attended to, this hook was unfastened, and the

weight rose as the lamp at the other end of the cable descended to within a few feet of the street level. When the lamp was in position for use, the weight fastened to the hook was within easy reach of persons standing upon the sidewalk. Wires for the conveyance of electricity to the lamp extended down from the main lines to insulators attached to the pole, thence further down the pole to other insulators twenty-two feet above the curb level, thence in a single cable to another insulator still further down the pole, and thence also in a single cable downward and outward to the lamp.

The plaintiff claimed to have established that this electric cable, at the point where it left the pole to reach the lamp, passed within from two to four inches of the iron cable connecting the lamp and counterweight, and that the two could there readily come into contact. He also claimed to have established that, for several months prior to the death of the intestate, the defendant had negligently suffered the insulation on the electric cable at the point of its proximity to the iron one to become so frayed and worn that the former was exposed, and contact with the latter permitted, and that thereby the latter had become charged with an electric current of dangerous voltage and communicable to the counterweight.

The dead body of the intestate was found lying near the base of this pole.

The contention of the plaintiff, controverted by the defendant, was that the death was caused by an electric shock. The theory presented to the jury by plaintiff's counsel was that this shock was caused by contact with the counterweight or iron cable, or other portion of the lighting apparatus presumed to be insulated; that the deceased stood upon the sidewalk at the time he received the shock; and that quite probably the contact had been brought about by the intestate's tak-

ing hold of the counterweight or iron cable, or attempting to do so, in an effort to cause the lamp, which had gone out, to give light again by shaking or hitting the counterweight or cable, and thus communicating a jar to the lamp.

The plaintiff offered evidence that members of the police force of the city had been accustomed, when they discovered a lamp to be unlighted, to take hold of the counterweight or iron cable to which it was attached, and give the weight or cable a shake or two, or perhaps rap it with their clubs, thus jarring the lamp at the far end of the cable and causing it to give light. It was testified that in this way the light would reappear in nine cases out of ten, and the necessity of report, and attention from the company's office, be avoided.

Following this testimony the plaintiff offered two policemen of the city, and inquired of them as to the knowledge of this practice which one Rees, an employee of the defendant, possessed, and as to information thereof they had given him. This testimony was objected to and excluded.

The evidence as to Rees' position and duties was to the effect that he was an employee of the defendant who trimmed the lamps and cared for them at night; that he was the man to whom, as the defendant's representative, reports that lights were out were made, and the man whose duty it was, upon receipt of such reports, to go out and fix them.

Other facts not pertinent to the opinion need not be stated.

*Ulysses G. Church,* for the appellant (plaintiff).

*Terrence F. Carmody* and *Walter E. Monagan,* for the appellee (defendant).

PRENTICE, C. J. Among the errors assigned is one complaining of the ruling excluding testimony regarding notice to or knowledge on the part of one Rees, an employee of the defendant, detailed in the preliminary statement. The evidence was offered for the purpose of bringing knowledge of claimed customary conduct on the part of policemen in connection with the defendant's electric street lamps home to the defendant, and thus imposing upon it a degree of duty in the maintenance and care of these lamps and their electric wiring and the insulations connected therewith which it might not otherwise have had. It was objected to and excluded upon the ground that Rees' relation to the defendant was not such that his knowledge would be imputed to it.

"It is the general rule, settled by an unbroken current of authority, that notice to, or knowledge of, an agent while acting within the scope of his authority and in reference to a matter over which his authority extends, is notice to, or knowledge of, the principal." 2 Mechem on Agency (2d Ed.) § 1803. "When, in the course of his employment, the agent acquires knowledge, or receives notice, of any fact material to the business in which he is employed, the principal is deemed . . . to have notice of such fact." Tiffany on Agency, p. 257.

These two slightly differing forms of expression, in substance affirmed by us in *Smith* v. *Water Commissioners*, 38 Conn. 208, 218, and *McGurk* v. *Metropolitan Life Ins. Co.*, 56 Conn. 528, 539, 16 Atl. 263, and elsewhere, state the generally accepted rule. It, however, has recognized exceptions, noticed by Tiffany in the omitted portion of the extract from his work, and more fully outlined by Mechem in § 1813 of his book.

With these exceptions we have no present concern, since no one of them touches the situation before us. The question presented to the trial court for determina-

tion, as preliminary to a conclusion upon the admissibility of the proffered testimony, was one whose answer depended upon the application, of the general principle stated, to the conditions as attempted to be established. What, under the evidence, was Rees' authority, and the scope and subject-matter of it; and how far was the claimed information material to the business with which he was entrusted?

The fact that he was not an officer of the defendant corporation, or a person high in its service, but an employee, is by no means decisive of the question presented. The test to be applied does not look to rank or title, but to the duties assigned, and the authority and obligations which went with that assignment.

Looking to the evidence, we find it to have been to the effect that the duties entrusted to Rees by the defendant were those of putting and keeping the street lamps in order for use, and in caring for them when in use. He was the man selected by the defendant for night oversight of them, and to receive and act upon complaints or information of irregularities in them. During his tour of duty, he represented the defendant in the field of attention, supervision and reparation, in so far as immediate reparation was practicable. The information which it was claimed that Rees received concerned the subject-matter of his employment most directly. It was material to the business entrusted to him as relating to the fitness of the lamps for use under the conditions of their use. It clearly was his duty, upon receipt of information or complaint, to either act himself or to report. "It is well settled that notice to an agent of a party, whose duty it is, as such agent, to act upon the notice, or to communicate the information to his principal, in the proper discharge of his trust as such agent, is legal notice to the principal." *Fulton Bank* v. *New York & Sharon Canal Co.*, 4 Paige

(N. Y.) 127, 137. "Notice to an agent of a corporation or an individual, relating to a matter of which he has the management and control, is notice to his master." *Lindgren* v. *Williams Brothers Boiler Mfg. Co.*, 112 Minn. 186, 190, 127 N. W. 626.

The evidence should have been admitted as tending to show knowledge on the part of the defendant, and its exclusion was calculated to harm the plaintiff.

A considerable number of other assignments are made. Some clearly are not well made. Others concern matters of so little importance that the result of the trial could not have been influenced by the court's action, even if it were technically erroneous. Only one or two present debatable questions having a possible material bearing upon the result. These questions we have no occasion to determine, since a new trial must be awarded, and it is not probable that their decision would be helpful upon such trial.

There is error and a new trial is ordered.

In this opinion the other judges concurred.