ANTHONY E. CORSELLO *vs.* THE EMERSON BROTHERS, INCORPORATED.

Third Judicial District, New Haven, January Term, 1927.
WHEELER, C. J., CURTIS, MALTBIE, HAINES and HINMAN, Js.

Section 5799 of the General Statutes provides that in every action of libel, the defendant may give proof of intention, and that if the plaintiff does not establish malice in fact or a refusal on request to retract, he shall recover only such actual damage as he may have specially alleged and proved. *Held* that "malice in fact", as there used, did not mean hatred or ill-will or a wilful intent to injure on the part of the defendant, but merely that he was actuated by an improper or unjustifiable motive; and

Corsello v. Emerson Brothers, Inc.

that while the statute was unquestionably designed to lend a measure of protection to newspaper publishers in discussing matters of public interest, by enabling them, through proof of good intention, to rebut the presumption of malice raised by the law from the falsity of the publication and to put upon the plaintiff the burden of proving by other and additional evidence a wrongful motive, it was not intended to absolve them from liability for publishing defamatory matter when done with actual malice.

After a police officer had been arrested upon the affidavit of a young girl charging him with the commission of an indecent assault upon her, the defendant published in its newspaper an article reciting that the girl had made a second affidavit in which she retracted the accusation contained in the first and alleged that the plaintiff, an attorney at law, had induced her to sign it without reading it to her. *Held:*

1. That since the article contained accusations which might have subjected the plaintiff to disbarment proceedings and to criminal prosecution, it was, if false, libelous *per se.*

2. That the occasion of the publication was one of conditional privilege which could not, however, be abused with impunity.

3. That from all the circumstances connected with the preparation and publication of the article, the jury were justified in concluding that it was published with "malice in fact"; and that, therefore, the trial court did not err in refusing to set aside the verdict for the plaintiff.

4. That the trial court properly admitted evidence of the truth of the facts contained in the first affidavit.

5. That, although the trial court erred in permitting the plaintiff to testify that defendant's reporter had informed him that he (the reporter) had repeated to his superior the plaintiff's warning not to print any article upon the subject until it had been shown to him, the error was harmless, since the testimony, though pure hearsay, was a mere repetition of a fact conclusively presumed in law, viz., that the knowledge of the reporter acquired while acting within the scope of his authority, was the knowledge of the defendant.

6. That since the article concerned the plaintiff in the practice of his profession and was libelous *per se,* he was properly allowed to state generally that his business had diminished as a result of it, without an allegation of special damage.

7. That, although the trial court erred in permitting him to testify further concerning a specific instance of the loss of a client, this single piece of evidence could not in any event have substantially affected the amount of the verdict which, under all the circumstances, was not excessive.

Argued January 26th—decided May 7th, 1927.

ACTION for libel, brought to the Superior Court in New Haven County and tried to the jury before *Jennings, J.;* verdict and judgment for the plaintiff and appeal by the defendant. *No error.*

*Robert L. Munger,* for the appellant (defendant).

*Alphonse C. Fasano,* for the appellee (plaintiff).

WHEELER, C. J.   The jury might reasonably have found these facts: Dorothy Dziadik, a girl of fifteen years of age on September 2d, 1925, in the office of the plaintiff, an attorney in good standing in Ansonia, signed and made oath to an affidavit which recited that police officer Shea of Ansonia had committed an indecent assault upon her on the evening of September 1st, as a result of which he had been placed under arrest on September 28th, released on bond, and the case against him continued.   On September 30th, this girl went with Officer Shea and a friend to the house of an attorney and then signed and made oath to another affidavit retracting the charge made against Officer Shea.   The following day the defendant, about noon, sent its reporter Kelly to the plaintiff, who informed the plaintiff that there was a terrible story in defendant's office about plaintiff giving or offering to give Dorothy Dziadik $5,000 to make charges against Officer Shea, whereupon the plaintiff replied that before publishing any comment or statement about the matter the newspaper should first permit him to read it, so that he might have an opportunity to make a statement, but that if any comment or statement were made about the plaintiff in the newspaper without first showing the statement to him, he would hold the newspaper responsible for any damages that might result from its publication.   Thereafter reporter Kelly came to him and told him he had reported his statement to his superior.

Corsello *v.* Emerson Brothers, Inc.

on defendant's staff. The article was published about four o'clock of the same afternoon without it having been shown to the plaintiff. It contained the matters we have recited concerning the first and second affidavits. The second of these affidavits also recited that the plaintiff came to her place of employment preceding the making of the first affidavit and requested her to go to his office that afternoon and that in compliance with this request she went to his office and plaintiff requested her to make a statement against Officer Shea which she refused to do. On several other occasions she says the plaintiff came to her place of employment and talked to her about Officer Shea and requested her to visit his office again and that in response to this request she went to his office and later at the request of the plaintiff signed an affidavit which he did not read to her. The article concluded with the statement that "attorney Corsello, who returned from New Haven early this afternoon, when asked for a statement, stated he had no comment to make." The headlines of the article were: "Girl denies making charges against Officer Shea. Fifteen-year-old Shelton miss who was said in an out-of-town Sunday newspaper to have made charges of improper conduct against the officer, makes affidavit in which she declares the charges baseless—says Attorney Corsello induced her to sign paper which was not read to her." The jury might reasonably have found that the facts stated in the second affidavit were false, and those stated in the first affidavit, upon which the officer was arrested, were true.

The charge against the plaintiff in this article is that he induced this girl to sign a false affidavit charging a police officer with a serious crime, and that, too, without having read the affidavit to her. Such an accusation was a serious reflection upon the professional conduct and reputation of this attorney and if true, con-

Corsello *v.* Emerson Brothers, Inc.

stituted a breach of the Code of Professional Ethics whose rules he was bound to observe, and for breach of which he might have been disciplined to the extent of being disbarred from the practice of his profession. It was also an accusation which might have subjected him to prosecution for the commission of a crime. The trial court was right in instructing the jury that the accusation was libelous *per se*. The jury could not reasonably have found upon the facts of record other than that the accusation was false. As we understand the plaintiff's brief he admits, for the purposes of this case, that the occasion of the publication of this article was one of conditional privilege. We shall so treat it. The subject-matter of this article concerned the public order; one of the police officers of the community in which the defendant's newspaper circulated was under arrest upon a charge made in one of these affidavits and retracted in the other. Everything which related to the charge against the police officer and which tended to throw light upon it, or upon these affidavits, was legitimate comment. The making and manner of making of the affidavits were relevant subjects of newspaper inquiry. If the accusation as made against the plaintiff attorney were true, there can be no question that it was within the province of this newspaper to publish it. But it could not use the occasion of its privilege to abuse the privilege.

Under General Statutes, § 5799, the defendant had the right to give proof of its intention, which it has done. The plaintiff had open to him two courses, either to request a retraction of the charge in as public a manner as that in which it was made, which he did not do, or to prove that the charge was made with malice in fact. Unless the plaintiff has pursued one or the other of these courses, the statute provides that "he shall recover nothing but such actual damage as

he may have specially alleged and proved." We say, in *Arnott* v. *Standard Association*, 57 Conn. 86, 92, 17 Atl. 361: "The cited statute was doubtless enacted in the interest of publishers of newspapers. It intended to furnish them a measure of protection in the publication of current news, criticisms upon public men and measures, and comments upon matters of public interest." It did not intend to give them opportunity to abuse the occasion of privilege which might on proper occasion be theirs, nor to give them protection in the privilege of repeating defamatory publications when done with "malice in fact." It did intend that upon proof of such intention "it should rebut the presumption of malice raised by the law from the publication of a false and defamatory article, and put upon the plaintiff the burden of proving by other and additional evidence an improper and unjustifiable motive." *Arnott* v. *Standard Association*, 57 Conn. 86, 92, 17 Atl. 361.

Both parties are in agreement that, an occasion of privilege having been shown, the liability of the defendant turns upon whether the plaintiff has established that the defamatory article was published by the defendant with malice in fact. As used in the statute, malice in fact neither means a wilful intention to injure another, nor hatred nor ill-will toward him, but merely that the false publication is actuated by an improper or unjustifiable motive. *Wynne* v. *Parsons*, 57 Conn. 73, 78, 17 Atl. 362. "By that decision" (*Moore* v. *Stevenson*, 27 Conn. 14) we say, in *Hotchkiss* v. *Porter*, 30 Conn. 414, 421, "it was settled that under the act the right of the plaintiff to recover general damages shall not depend on the mere legal presumption of improper and unjustifiable motive, derived from the fact of publishing that which is untrue, but upon the question whether such improper and un-

justifiable motive has been proved or disproved as a matter of fact by the evidence adduced for that purpose on the trial." All the circumstances connected with the preparation and publication of the defamatory charge are to be considered and weighed in ascertaining whether the publication was made with malice in fact. Facts material to this inquiry are, the efforts made before publication to ascertain the truth of the charge and to give the plaintiff an opportunity to comment upon the publication, the gravity of the charge, whether the person accused requested an opportunity to see the article prior to its publication and warned the newspaper against its publication without giving him an opportunity to make comment upon it, whether it was fair comment of news of public interest and made in the performance of a duty owed to the public. Out of these and related considerations, the plaintiff must establish a reasonable inference that the defamatory charge was made from an improper and unjustifiable motive. The jury had before them the defamatory publication, they could fairly have reached the conclusion that the defendant must have known that the publication would prove particularly prejudicial to an attorney in good standing; they might well have found that the publication went beyond the allegations of the affidavit, that it was not made after reasonable investigation in view of the consequences attendant upon such a publication, and they must also have found that the plaintiff made request to reporter Kelly and warned him against this article without giving him the opportunity to see it prior to its publication. They might also have found that reporter Kelly reported to his superior this request and warning. It is true the superior denied that Kelly had told him this prior to the publication. In this conflict of evidence it was for the jury to find the fact and they could fairly have

drawn the inference that the absence as a witness of Kelly who had continued in the employ of the defendant was due to his inability to corroborate his superior. If the jury so found, they were entitled to find that the publication was made with improper and unjustifiable motive and therefore with malice in fact, because made in abuse of its occasion of privilege and in disregard of the plaintiff's rights and reputation and of the inevitable consequences to him from such a publication. The trial court was fully justified in refusing to set aside the verdict.

The rulings on evidence, with two exceptions, were correct. Proof of the truth of the facts stated in the first affidavit was properly admitted. The publication charged the plaintiff with having induced the making of a false affidavit; it was indispensable to the plaintiff's case to prove, as he had alleged in his complaint, that the facts stated in the first affidavit were true and those stated in the second affidavit were false. The plaintiff testified against defendant's objection and exception, that after the publication of the article, defendant's reporter Kelly informed plaintiff that he had reported plaintiff's request and warning to his superior prior to the publication of the article. Defendant claims this was pure hearsay. Kelly was the agent of defendant in obtaining from the plaintiff the information concerning this publication and all that the plaintiff said to him at this time concerning this subject-matter was received by him while acting as the agent of the defendant and was within the scope of his authority and in the line of his duty. This included plaintiff's statement and warning that he would hold the newspaper responsible for a publication of the article without having first submitted it to him. Our law conclusively presumes that Kelly, the agent of the defendant, disclosed this information to his principal,

the defendant, and imputes and charges the principal with its knowledge. *Smith* v. *Water Commissioners,* 38 Conn. 208; *Simon* v. *Fernandez,* 100 Conn. 438, 123 Atl. 904; *Lane* v. *United Electric Light & Water Co.,* 88 Conn. 670, 92 Atl. 430; 2 Mechem on Agency (2d Ed.) §§ 1806, 1813. To this recognized general rule there are certain exceptions, but this case does not fall within any of these. That the plaintiff was permitted to testify that Kelly said he had told his principal what the plaintiff had said to him, was a mere repetition of what the law conclusively presumed. It did not add anything to this established fact and hence, though hearsay, its admission was a harmless error.

A copy of the Register newspaper, containing an article in reference to the matter contained in the first affidavit, was admitted against defendant's objection and exception, as part of the general circumstances surrounding the publication. No connection was shown between the defendant and the newspaper laid in evidence, nor did it appear that the defendant had any knowledge of this article, or authorized it, or caused it to be published. The admission of this newspaper cannot be supported upon any theory upon the facts of record, yet we are unable to understand in what way its admission could have prejudiced the defendant.

The plaintiff was inquired of as to whether his law practice had diminished since the publication of the alleged libel. Defendant objected to this inquiry because immaterial and irrelevant and not within the pleadings. Plaintiff answered, "It has." Since the alleged libel concerned the plaintiff in the practice of his profession, it was slanderous *per se;* it was therefore proper for him to show, without an allegation of special damage, the general diminution of his law practice since the publication of this libel. *Williams Print-*

*ing Co.* v. *Saunders,* 113 Va. 156, 73 S. E. 472; Newell on Slander & Libel (4th Ed.) § 751, note 83, § 757, note 93. 37 Corpus Juris 92, notes 44 to 46 inclusive.

The plaintiff was also permitted to testify, against defendant's objection and exception, that prior to the publication of this article he had a case for a client relating to a claim for damage and after the publication another attorney represented his former client. This was evidence of special damage and inadmissible because not alleged in the complaint. Newell on Libel & Slander (4th Ed.) § 757, treats of the distinction between the loss of individual customers and a general diminution in profits in these words: "Loss of customers is special damage, and must be specially alleged and the customers' names stated; if that be done the consequent reduction in plaintiff's annual income can easily be reckoned. But if no names are given it will be impossible to connect the alleged diminution in the general profits of plaintiff's business with the defamatory words; it may be due to fluctuations in prices, to a change of management, to a new shop being opened in opposition or to many other causes. Hence, such an indefinite loss of business is considered general damage, and can only be proved where the words are spoken of the plaintiff in the way of his trade, and so are actionable in themselves. For there the law presumes that such words must injure the plaintiff's business, and therefore attributes to those words the diminution it finds in his profits. The loss to the plaintiff must be directly connected with the defendant's utterance of the words." *Harrison* v. *Pearce,* 1 F. & F. 567, 32 L. T. (O. S.) 298.

The admission of this evidence, assuming that the jury drew from it the inference that this loss of a client was caused by the publication, could not have affected the amount of the award except in a very small degree,

The damages were not excessive if the jury found the publication was made with malice in fact. Under these circumstances we do not think a new trial should be ordered for the error in admitting this single piece of evidence, which in no event could have substantially affected the amount of the verdict.

There is no error.

In this opinion the other judges concurred.