GEORGE O. FOGG *vs.* BOSTON AND LOWELL RAILROAD
CORPORATION.

Suffolk.    January 16, 1889. — February 27, 1889.

Present : MORTON, C. J., FIELD, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*Liability of Corporation for a Libel.*

A corporation is liable in damages for the publication of a libel, as it is for its other
torts.

At the trial of an action for libel against a railroad corporation, there was evidence
that the plaintiff was a railroad ticket broker in a city where the defendant
had its chief terminus and its principal managing agents were, including its
general passenger agent; that a libellous extract from a newspaper, to the
effect that the plaintiff was neither safe nor reliable to deal with, was kept
posted forty days in a conspicuous place in an office of the defendant in the
same street with the plaintiff's office, and arranged especially for the sale and

advertising of railroad tickets under the charge of a ticket agent and clerks employed by it; and that the general passenger agent, although notified, refused to interfere with such posting. *Held,* that there was evidence for the jury that the defendant had published the libel or ratified its publication, or that it was published by a servant of the defendant's in the course of his employment.

TORT for an alleged libel contained in the following words : " Alleged Ticket Swindle. A Boston man charged with swindling a poor woman. (Special despatch to the Herald.) New York, May 8, 1885. Catherine Egan, of Kansas City, cried bitterly at Castle Garden to-day, as she told how she had been swindled. · She made affidavit that she went to Boston to get her two children, who had just landed. Mr. Fogg, of 272 Washington Street, she said, sold her two tickets to Chicago for sixteen dollars. They proved to be one-dollar tickets sold by the Pennsylvania Railroad some months ago, and are now worthless. Superintendent Jackson telegraphed to the chief of police of Boston to arrest Fogg, and sent the woman and children back to Boston." Writ dated June 20, 1885.

Trial in the Superior Court, before *Thompson,* J., who allowed a bill of exceptions, in substance as follows.

The defendant admitted that the above words were libellous. There was evidence tending to show that, in May and June, 1885, the plaintiff was a railroad ticket broker doing business at No. 277 Washington Street, Boston ; that Lucius Tuttle was the general passenger and ticket agent of the defendant corporation, having his office in its station on Causeway Street, in said Boston, receiving a stated salary from the defendant for his services as such agent, and as such " was in general charge, on behalf of said corporation, of all the tickets and sales of tickets for transportation of passengers over the road of the defendant corporation and its connections, and had the general control and supervision of all offices used for, and the agents employed by, said corporation in the sale of said tickets "; that one of the defendant's offices for the sale ·of passenger tickets was at No. 218 Washington Street, Boston, which was leased by the defendant, and was arranged especially for the sale of tickets and for advertising the same, and was in the immediate charge of Lorenzo S. Dow, whose clerks in that office were one Chick and one Pendergast, and that Dow, Chick, and Pendergast were all

employed by the defendant at fixed salaries, and were each and all under the control and supervision of Tuttle.

There was also evidence that the alleged libel was printed in the morning edition of the Boston Herald of May 9, 1885 ; that in the evening edition of that day a retraction of the same was printed by that paper ; that on May 10, 1885, there was conspicuously hung up in the defendant's office at No. 218 Washington Street, where everybody might see it who should enter the office for the transaction of business or for the purchase of tickets, a placard, or half-sheet of note paper, upon which was pasted a copy of the alleged libel, cut from the Boston Herald, with double lines of red ink drawn around the printed matter, with the words " Boston Herald " above, and " May 9, 1885," below the red lines ; that on or about May 22, acting upon information, the plaintiff, with one Miles, upon going to the defendant's office, there found displayed this libellous placard ; that, after conversation in relation to it with either Chick or Pendergast, in Dow's absence, the plaintiff removed the libellous placard, saying, substantially, " I won't have it here ; it hurts my character ; it injures my business ; if you hang up such a thing as this, why don't you hang the retraction, too ? " that thereupon Miles, at the plaintiff's request, went immediately to Tuttle, and exhibited the libellous placard to him, telling him that the publication was injuring the plaintiff, and requesting him to have it stopped.

There was further evidence, that Dow, on the same day, went to the plaintiff's office, and stated that he had procured another copy of the libellous article, and hung it up again in the defendant's office at No. 218 Washington Street, where, on the same day, the plaintiff saw it exposed publicly in full view of everybody entering the office, in substantially the same form and manner as it had been displayed previously to its removal by him, and where it hung until the date of the writ ; that the plaintiff, and Miles, at his request and on his behalf, immediately notified Tuttle in writing of the continuance of the publication of the libellous matter in the defendant's office.  Tuttle wrote to Miles as follows : " Dear Sir, — I received your letter of 22d inst., and also one from Mr. Fogg.  After having examined into the whole matter, it seems to me that, in going into Mr. Dow's office and

taking away, without his knowledge or permission, any material hanging therein, you were the aggressor. This is aside from all question of whether Dow's course in hanging up the notice in question was advisable. The notice was cut from a public newspaper and was Dow's property, and it being such, he had a right to expose it in any way he pleased upon the premises under his charge. If you had gone to Dow and asked him to remove the notice, and he had refused to do so, I think you would then have had ground for complaint to me, but as you took the law in your own hands, it seems to me you left nothing for me to do. I have no doubt, if you call upon Mr. Dow at his office, and state the case to him as you have to me, you will find him willing to accommodate you in every particular; until you do this, it does not seem a matter for me to interfere with."

The judge ruled that there was no evidence to go to the jury, and directed a verdict for the defendant; and the plaintiff alleged exceptions.

*E. Merwin & E. L. Buffinton*, ( *C. W. Bartlett* with them,) for the plaintiff.

*S. Lincoln & W. H. Coolidge*, for the defendant.

KNOWLTON, J. A corporation is liable in damages for the publication of a libel, as it is for its other torts. *Whitfield* v. *South Eastern Railway*, El., Bl. & El. 115. *Philadelphia, Wilmington, & Baltimore Railroad* v. *Quigley*, 21 How. 202. *Samuels* v. *Evening Mail Association*, 75 N. Y. 604, following the dissenting opinion in 9 Hun, 294. To establish its liability, the publication must be shown to have been made by its authority, or to have been ratified by it, or to have been made by one of its servants or agents in the course of the business in which he was employed.

In the present case, we think there was evidence against the defendant, upon each of these grounds, which should have been submitted to the jury for their consideration.

It was admitted that a libellous extract from a newspaper was kept posted forty days in a conspicuous place in the defendant's office in Boston, which was arranged especially for the sale and advertising of railroad tickets, and was in the immediate charge of one of the defendant's employees. The plaintiff was a railroad ticket broker doing business on the same street. The state-

ments in the libel indicated that he was not a safe and reliable person from whom to buy tickets. . From the evidence in the case the jury might have inferred that the defendant's office was used, not merely for advertising tickets, but for advertising and publishing any other information of interest to persons about to purchase tickets, which would be likely to induce them to. buy. at the defendant's office rather than elsewhere.   One who maintains a place of business may be presumed to have general knowledge of what is done there.  The jury might properly have found that the defendant, having its principal terminus and the offices of its principal managing agents in Boston, had knowledge from time to time of what kinds of advertisements and notices were posted in its ticket office there, and that the libel would not have remained so long in that conspicuous place if the corporation had not originally authorized, or afterwards ratified, the act of posting it.

But there was additional evidence of ratification of this publication by the defendant.  We have the letter of the defendant's general passenger agent, written nearly a month before the publication was discontinued, in which he declined to interfere with it.   This agent " was in general charge, on behalf of said corporation, of all the tickets and sales of tickets. for the transportation of passengers over the road of the defendant corporation and its connections, and had the general control and supervision of all the offices used for, and the agents employed by, said corporation in the sale of said tickets."  He was the representative of the corporation, to determine in its behalf what kinds of notices should be posted in its ticket offices.  His determination to permit the libel to remain before the eyes of the public in the defendant's ticket office was an act of the defendant; and it was evidence from which, in connection with the other evidence in the case, the jury might have inferred a ratification of the original publication, and also a publication from that time, by the defendant.  *Baldwin* v. *Casella*, L. R. 7 Ex. 325. *Smith* v. *Water Commissioners*, 38 Conn. 208.  *St. James Parish* v. *Newburyport & Amesbury Horse Railroad*, 141 Mass. 500.

Upon the third ground, we think it was a question for the jury, on the whole evidence, whether the defendant was not responsible for the original act of Dow, without actual knowl-

edge or subsequent ratification of it. Dow was in charge of the office, subject to the supervision of the general passenger agent. One of the uses of the office was to advertise tickets, and presumptively to furnish information in relation to the purchase of tickets. It may be inferred that it was a part of his duty to post in the office notices pertaining to the business carried on there. The libel which he posted was calculated to diminish the plaintiff's, and thereby to increase the defendant's, income from the sale of tickets. In these and other facts and circumstances, there was evidence that his act was done in the course of his business as a servant of the defendant. If it was so done, the defendant is liable for it, even though it was in excess of his authority and wrongful. *Howe* v. *Newmarch*, 12 Allen, 49. *Hawes* v. *Knowles*, 114 Mass. 518. *Levi* v. *Brooks*, 121 Mass. 501. *Goddard* v. *Grand Trunk Railway*, 57 Maine, 202. *Philadelphia & Reading Railroad* v. *Derby*, 14 How. 468.

*Exceptions sustained.*