## KIRK E. NIMS vs. MOUNT HERMON BOYS' SCHOOL.

Franklin.    September 19, 1893. — November 29, 1893.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & LATHROP, JJ.

*Educational Corporation — Maintenance of Public Ferry — Ultra Vires — Action — Principal and Agent — Ratification.*

It is no defence to an action against an educational corporation, for personal injuries occasioned to a passenger for hire upon a boat used at a public ferry operated by the corporation, through the negligence of the ferryman in managing the boat, that the maintenance of the ferry was *ultra vires.*

It is not necessary that the ratification by a corporation of acts of its agent should be by a formal vote.

If a corporation, acting through its managing officers, knowing that a certain business has been carried on by those who assumed to act as its agents in doing it, that the income of the business has been received and the expenses of it paid by its treasurer in his official capacity, and that the balance of the receipts above the expenditures is in its treasury, adopts the action of the treasurer and elects to keep the money, the jury, in an action against the corporation for an injury arising from the doing of the business in question, will be authorized to find a ratification by the corporation of the acts of such agents.

KNOWLTON, J.    The defendant is an educational corporation. The plaintiff seeks to recover damages for an injury received through the negligence of a ferryman in managing a boat on which he was a passenger, and which, as he alleges, the defendant was using at a public ferry in the business of carrying passengers for hire.    At the request of the defendant, the presiding justice ruled that there was no evidence to warrant a finding for the plaintiff, and directed a verdict for the defendant.    The defendant contends that the ruling should be sustained on one or both of two grounds.    It says in the first place, that, if it maintained the ferry and hired and paid the ferryman, the business was *ultra vires,* and therefore it is not liable for negligence in the management of the boat.    Secondly, it contends that there was no evidence to connect the corporation with the business of running the ferry-boat, or to show that the ferryman was its servant.

It is a general rule that corporations are liable for their torts as natural persons are.    It is no defence to an action for a tort to show that the corporation is not authorized by its charter to

do wrong.  Recovery may be had against corporations · for assault and battery, for libel and for malicious prosecution, as well as for torts resulting from negligent management of the corporate business.  *Moore* v. *Fitchburg Railroad*, 4 Gray, 465.  *Reed* v. *Home Savings Bank*, 130 Mass. 443.  *Fogg* v. *Boston & Lowell Railroad*, 148 Mass. 513.  *Philadelphia, Wilmington, & Baltimore Railroad* v. *Quigley*, 21 How. 202, 209.  *Merchants' Bank* v. *State Bank*, 10 Wall. 604.  *National Bank* v. *Graham*, 100 U. S. 699.  *Gruber* v. *Washington & Jamesville Railroad*, 92 N. C. 1. *Hussey* v. *Norfolk Southern Railroad*, 98 N. C. 34.  If a corporation by its officers or agents unlawfully injures a person, whether intentionally or negligently, it would be most unjust to allow it to escape responsibility on the ground that its act is *ultra vires*. The only plausible ground on which the defendant in the present case can contend that it should be exempt from liability for the negligence of its servant in managing the ferry-boat is that the contract to carry the plaintiff was *ultra vires*, and therefore invalid, and that the duty for neglect of which the plaintiff sues arose out of the contract, and disappears with it when the contract appears to be void.  The defendant may argue that the plaintiff cannot maintain an action for a breach of the contract to use proper care to carry him safely, and that he stands no better when he sues in tort for failure to do the duty which grew out of the contract.

In *Bissell* v. *Michigan Southern & Northern Indiana Railroad*, 22 N. Y. 258, the plaintiff founded his action on the negligence of the two defendants while jointly running cars on a railroad in a State to which the charter of neither of them extended, and it was conceded that the defendants were acting *ultra vires*.  The plaintiff recovered, Comstock, C. J. holding in an elaborate opinion that the corporations were liable under their contract, notwithstanding that the contract was *ultra vires*, and that if they could not be held under their contract they could not be held at all, inasmuch as the only negligence alleged was · a failure to use the care which the contract called for. Selden, J., in an equally full and elaborate opinion, held that the contract for carriage was invalid, and that there could be no recovery under it, nor for negligence founded upon it ; but it was his opinion that, if the contract were set aside, the

defendants owed the plaintiff a duty founded on his relation
to them as an occupant, with their permission, of a place in
their car, and that the improper management of the car was
a neglect of that duty for which the plaintiff could recover.
Clerke, J. agreed with this view, and all but one of the other
judges concurred in a decision for the plaintiff, without stating
the ground on which they thought the decision should be placed.
This case was followed in *Buffett* v. *Troy & Boston Railroad*, 40
N. Y. 168, in which it was held that a railroad corporation was
liable for negligence of the driver of a stage-coach which it was
running without a legal right to do a business of that kind ; but
the opinion does not show whether the decision is founded on
the opinion of Comstock, C. J., given in the former case, or
on that of Selden, J.   Like decisions have been made under
similar facts in *Central Railroad & Banking Co.* v. *Smith*, 76
Ala. 572 ; *New York, Lake Erie, & Western Railway* v. *Haring*,
18 Vroom, 137 ; and *Hutchinson* v. *Western & Atlantic Railroad*,
6 Heisk. 634.

The better doctrine seems to be that a contract made by a
corporation in violation of its charter, or in excess of the powers
granted to it either expressly or by implication, is invalid consid-
ered merely as a contract, and, so long as it is entirely executory,
will not be enforced.   It is not only a violation of a private
trust, viewed in reference to the stockholders, but it is against
the policy of the law, which intends that corporations deriving
their powers solely from the Legislature shall not pass beyond
the limits of the field of activity in which they are permitted
by their charter to work.   *Monument National Bank* v. *Globe
Works*, 101 Mass. 57.   *Attorney General* v. *Tudor Ice Co.* 104
Mass. 239.   *Davis* v. *Old Colony Railroad*, 131 Mass. 258.   *Thomas*
v. *Railroad Co.* 101 U. S. 71.   *Leslie* v. *Lorillard*, 110 N. Y.
519.   *Linkauf* v. *Lombard*, 137 N. Y. 417.   *East Anglian Rail-
ways* v. *Eastern Counties Railway*, 11 C. B. 775, 803.   On the
other hand, courts have frequently held that, while such con-
tracts considered merely as contracts are invalid, they involve
no such element of moral or legal wrong as to forbid their
enforcement if there has been such action under them as to
work injustice if they are set aside.   Courts have been astute
to discover something in the nature of an equitable estoppel

against one who, after entering into such a contract and inducing a change of condition by another party, attempts to avoid the contract by a plea of *ultra vires.* It is said that such a plea will not avail when to allow it would work injustice and accomplish legal wrong. *Leslie* v. *Lorillard*, 110 N. Y. 519. *Linkauf* v. *Lombard*, 137 N. Y. 417, 423. Many cases might be supposed in which it would be most unjust to hold that one who had received the benefits of such a contract might retain them and leave the other party without remedy, as he might do in a supposable case, where another had put himself at a disadvantage on the faith of a contract with him to commit a crime. Whether in this Commonwealth a contract entered into by a corporation *ultra vires*, and partly performed, will ever be enforced on equitable grounds, we need not now decide. See *McCluer* v. *Manchester & Lawrence Railroad*, 13 Gray, 124; *National Pemberton Bank* v. *Porter*, 125 Mass. 333; *Attleborough National Bank* v. *Rogers*, 125 Mass. 339; *Atlas National Bank* v. *Savery*, 127 Mass. 75, 77; *Slater Woollen Co.* v. *Lamb*, 143 Mass. 420; *Prescott National Bank* v. *Butler*, 157 Mass. 548; *National Bank* v. *Matthews*, 98 U. S. 621; *National Bank* v. *Whitney*, 103 U. S. 99; *Parish* v. *Wheeler*, 22 N. Y. 494; *Oil Creek & Allegheny River Railroad* v. *Pennsylvania Transportation Co.* 83 Penn. St. 160; *Bradley* v. *Ballard*, 55 Ill. 413. In the present case we think it makes no difference that the defendant was not a manufacturing or trading corporation, but was chartered for educational purposes only. It could acquire and hold property, make contracts, and do anything else incidental to the maintenance of the school. Doubtless some of its officers or agents thought it would be an advantage to its students and managers to have a public ferry at the place where the plaintiff was injured. Its maintenance of such a ferry was *ultra vires*, but its acts in that respect were not different in kind from the ordinary acts of corporations in excess of the powers given them by their charter. We are of opinion, therefore, that if the defendant while running the ferry-boat accepted the plaintiff as a passenger to be transported for hire, and undertook to carry him across the river, he was in the boat as a licensee, it owed him the duty to use proper care to carry him safely, and, whether an action could be maintained for a breach of the contract or not,

it is liable to the plaintiff in an action of tort for neglect of that duty.

The other question in the case is whether there was evidence that the corporation operated the ferry. Under its by-laws the management of the corporation is vested in a board of trustees. It does not appear that any vote was ever taken in regard to the ferry, and it was not shown that any officer of the corporation took out the license which was granted to the defendant by the county commissioners, under Pub. Sts. c. 55, § 1, to keep the ferry, but the records of the county commissioners show that such a license was granted, and that a bond with sureties was given to the county of Franklin, with the condition properly to perform the duty of a ferryman, executed in behalf of the defendant by one who was designated as superintendent, and witnessed by the defendant's cashier and paymaster. It further appeared that the title to the property used at the ferry was taken by Ambert G. Moody, one of the trustees of the defendant, who was then a student in Amherst College, and that he paid for it only a nominal sum above the mortgage existing upon it, and that he and the defendant's superintendent, who had charge of its farm, employed one Deane to operate the ferry, who was paid by the month, and who turned over the balance of the receipts of the ferry above his wages to the defendant's cashier and paymaster. For the month of April Deane was paid for his services by the defendant's paymaster out of the defendant's funds. In June, 1890, a new ferry-boat was constructed under an arrangement with Ambert G. Moody and Dwight L. Moody, both of whom were trustees of the corporation, and was paid for by the paymaster out of the funds of the corporation. For six months, and until there was a change in the management of the ferry, the defendant's cashier and pay-master sent to the treasurer, who lived in New York, monthly accounts, showing monthly receipts and expenses on account of the ferry. Accompanying the first of these accounts was a statement that the school was running the ferry and paying the bills. The treasurer was himself a trustee of the corporation. He subsequently rendered his official report to the corporation, which was audited by another of the trustees, who did not examine the items in person, but caused the examination to be

made by a man in his employment. This report was accepted by the trustees and placed on file. The items of receipts and expenditures were entered on the books of the treasurer in an account under the title " ferry." The treasurer's report was not put in evidence, and was not produced, although the defendant was notified to produce it.

There is no evidence of original authority from the defendant to anybody to operate the ferry on its account, but the evidence is plenary that persons connected with the management of its business assumed so to operate it. The important question is whether there was evidence that the corporation ratified the acts of these persons. We are of opinion that there was evidence from which the jury might have found such ratification. It is not necessary that the ratification should be by a formal vote. It is enough if the corporation, acting through its managing officers, knowing that the business had been done by those who assumed to act as its agents in doing it, and that the income of the business had been received and the expenses of it paid by its treasurer in his official capacity, and that the balance of the receipts above the expenditures was in its treasury, adopted the action of its treasurer, and elected to keep the money. It was a fair inference of fact, especially when the corporation failed to produce the treasurer's report after notice to produce it, that the report contained a true statement of the accounts which related to the ferry, and that it was accepted with full knowledge on the part of the trustees of what it contained.. Whether there was a ratification by the corporation was a question of fact for the jury on all the evidence.

If there was such a ratification, it carried with it the consequences which would have followed an original authority. In *Dempsey* v. *Chambers*, 154 Mass. 330, it was held, after much consideration, that ratification of an unauthorized act would make the principal liable in an action of tort for an injury resulting from negligence of the agent in doing the act.

We are of opinion that the case should have been submitted to the jury.

*Exceptions sustained.*

D. *Malone*, for the plaintiff.
C. C. *Conant*, for the defendant.