WILLIAM HOTCHKIN *vs.* THIRD NATIONAL BANK OF SYRACUSE.

Suffolk. November 9, 1914. — November 23, 1914.

Present: RUGG, C. J., HAMMOND, BRALEY, DE COURCY, & CROSBY, JJ.

*National Bank. Corporation, Ultra Vires. Bank.*

A national bank, organized under U. S. Rev. Sts. §§ 5133 *et seq.,* as amended by the U. S. St. of March 14, 1900, c. 41, whose powers are defined by U. S. Rev. Sts. §§ 5136, 5137, has no power to make an executory contract to sell at a price named a certain number of shares of stock in a corporation, which it does not own at the time of making the contract, and damages cannot be recovered in an action against a national bank for its breach of such a contract where the bank sets up the defense of *ultra vires.*

CONTRACT, by a stockbroker of Boston against the Third National Bank of Syracuse in the State of New York, for the breach of an alleged contract to sell and deliver to the plaintiff

one hundred shares of the common stock of the Syracuse Rapid Transit Company at $58 a share. Writ dated October 13, 1911.

The answer, as amended, in addition to a general denial, set up the defense that the contract was void for the reason that it was beyond the corporate powers of the defendant to make such a contract. It also set up the defense of the statute of frauds and St. 1908, c. 237, § 4.

In the Superior Court the case was tried before *Bell*, J. A portion of the evidence is described in the opinion. The judge submitted to the jury certain issues. Among other answers, the jury answered in the affirmative the question, "Was the defendant's contract, if any, broken before the beginning of this action, October 13, 1911?" The fifth ruling requested by the defendant, which is quoted in the opinion, was refused by the judge.

The judge ordered a verdict for the defendant, instructing the jury in part as follows: "The law of this Commonwealth requires that in the case of a sale of personal property to the value of more than $500, the contract, or some memorandum thereof signed by the party to be charged, must be in writing, and that is the principal question which has been heard, although there are some others, and the question which was heard before me was whether the letter written by Mr. Hotchkin to the bank and the answer returned by the cashier, taken together, amounted to a memorandum signed by the cashier of the sale of that stock. And I am of the opinion that they do not; that the answer of the cashier is not an assent to the terms stated by Mr. Hotchkin in his letter, but is a qualifying assent or a dissent; that he does not accept the terms stated, but says that it was a conditional sale; and therefore, it seems to me that the letter signed by the cashier, even if taken with the letter to him from Hotchkin, do not together constitute a memorandum signed by the cashier, and in that view of the law, I am obliged to order a verdict for the defendant."

The judge then reported the case for determination by this court, such judgment to be entered as justice and equity might require.

*H. W. Ogden*, (*E. O. Proctor* with him,) for the plaintiff.

*G. M. G. Nichols*, (*J. A. Locke* with him,) for the defendant.

BRALEY, J.  The jury specially found that the defendant con- tracted to sell and deliver one hundred shares of the capital stock of the Syracuse Rapid Transit Company.  It having failed to perform the contract, the plaintiff contends that he is entitled to damages for the breach.  It appears from the record to have been uncontroverted that at the time of the negotiations the defendant did not have any of the stock but it was acting for a "client," who owned the shares.  The letter of the cashier, on which the plaintiff relies as an acceptance in writing of the offer to purchase, recites that the sale "was upon the condition that our client would fill and he has been unable to so far, and it is the impression of his broker that he sold the stock to you through another channel;" and in the second letter, two days later, in reply to the plaintiff's demand for delivery, the cashier states, "Our client has not filled. . . . His broker informs me now that his client sold this stock to you direct the same day that we were negotiating with you."

If, without deciding, it is assumed that the sale was uncon- ditional, as the plaintiff urges, and that, if made here, the R. L. c. 74, § 5, was satisfied, the answer avers the lack of corporate power to make the contract.  And by the fifth request the de- fendant asked the trial judge to rule that, "If any contract be found to have been made for the sale to the plaintiff of the stock in question, such contract is *ultra vires* the defendant corporation and the plaintiff cannot recover under such contract."  We are of opinion that the ruling should have been given.

The defendant is a national bank, organized under the U. S. Rev. Sts. §§ 5133 *et seq.*, as amended by the U. S. Sts. of March 14, 1900, c. 41, and of April 12, 1902, c. 503.  Its corporate powers are defined in §§ 5136, 5137, and the question whether a national bank can deal in the stock of other corporations was fully considered in *California Bank* v. *Kennedy,* 167 U. S. 362. If the defendant had held the stock as collateral security for a loan it could upon default of the debtor have made the security available by enforcing its rights as pledgee and, if necessary for its protection, it could become the owner at the sale and hence a shareholder in the transit company.  It would have acquired title in the exercise of a power incidental to the making of the loan.  *National Bank* v. *Case,* 99 U. S. 628.  *First National Bank*

*of Charlotte* v. *National Exchange Bank of Baltimore,* 92 U. S. 122. The stock when accepted as payment or in satisfaction of the loan can be subsequently converted into money, although so long as the bank remains a shareholder it is subject to the same liability as the other shareholders. *Concord First National Bank* v. *Hawkins,* 174 U. S. 364, 368. But such transactions are obviously distinguishable from the business of buying ·and selling stocks, as a source of revenue or profit, which would subject the capital contributed by the stockholders to the hazards of speculation, independently of the ordinary risks of banking. The power to engage in such an enterprise, however attractive it may be, is not expressly given by the statute, nor can it be implied as incidental to the business of banking which it is chartered to transact. *California Bank* v. *Kennedy,* 167 U. S. 362. It was said in *Davis* v. *Old Colony Railroad,* 131 Mass. 258, 259, "A corporation has power to do such business only as it is authorized by its act of incorporation to do, and no other." This principle was elaborated in *Central Transportation Co.* v. *Pullman's Palace Car Co.* 139 U. S. 24, 59, 60, and followed as applicable to the contractual powers of national banks in *California Bank* v. *Kennedy, ubi supra.* The plaintiff being chargeable with notice of the defendant's statutory powers, he cannot allege ignorance of the limitation, and where the contract, as in the case at bar, is wholly executory, it is not enforceable either by a suit for specific performance or by an action for damages. *Dodge* v. *Woolsey,* 18 How. 331. *Nims* v. *Mount Hermon Boys' School,* 160 Mass. 177, 179, 180. *Eastern Expanded Metal Co.* v. *Webb Granite & Construction Co.* 195 Mass. 356, 362.

The verdict for the defendant, although directed on other grounds, which need not be considered, having been rightly ordered, it should stand and judgment thereon is to be entered for the defendant. *Jennings* v. *Puffer,* 203 Mass. 534.

*So ordered.*