ARTHUR P. TEELE, executor, *vs.* ROCKPORT GRANITE COMPANY. SAME *vs.* SAME.

Suffolk.   January 10, 1916. — May 15, 1916.

Present: RUGG, C. J., DE COURCY, CROSBY, & PIERCE, JJ.

*Corporation*, Change of nature of business, Rights of stockholder.   *Equity Jurisdiction*, To enforce rights of stockholder upon change of nature of business of corporation, Laches.   *Mandamus*.   *Estoppel*.

A corporation, organized in 1864 for the purposes of "quarrying and preparing for the market of stone" in two specified towns, "and for selling the same," voted in 1914 to amend the statement of its corporate purposes to include, among others, beside those previously stated, a power to conduct its business both within and without the Commonwealth; the owning or leasing of lands containing stone "or other lands" for the purposes of the corporation; the entering into and carrying out of contracts for the construction of all kinds of structures so far as they might be advantageous for placing in the structures stone quarried or prepared by the corporation; the laying out and construction of railroad, telephone and telegraph lines and the construction, equipment, leasing and purchase of vessels of every nature and description, so far as such railroads, telephone and telegraph lines and vessels might be necessary and appurtenant to any purposes of the cor-

poration; the dealing in general merchandise, and the holding, purchasing or otherwise acquiring, and the selling or otherwise disposing of shares of the capital stock and securities of other corporations and the exercising of the right of ownership thereof. *Held,* that by such amendment the corporation "voted . . . to change the nature of its business," so that a stockholder who voted against such change might have payment for his stock in accordance with the provisions of St. 1903, c. 437, § 44.

And if, after such a stockholder has made the demand in writing specified in the statute and the corporation has refused payment for his stock, the stockholder appoints an appraiser and notifies the corporation, but it refuses to appoint an appraiser, the stockholder by a bill in equity may compel the appointment of such an appraiser and compliance by the corporation with the provisions of the statute.

Such stockholder's rights are not precluded by the facts that, throughout the greater part of the period from the organization of the corporation in 1864 to the date of the vote referred to, the directors had done the things specified in the vote, had reported their doings to the stockholders and the stockholders had made no objection.

Nor are the rights of the stockholder affected by the fact that, while his suit in equity was pending, the corporation tendered to him and he received a dividend on his shares of stock.

Mandamus is not the proper remedy for compelling a corporation to comply with the provisions of St. 1903, c. 437, § 44.

BILL IN EQUITY, filed in the Supreme Judicial Court on April 9, 1915; and,

PETITION for a writ of mandamus, filed in that court on March 5, 1915, both proceedings being brought by Mary P. Teele, a stockholder in the defendant corporation, to compel compliance by it with the provisions of St. 1903, c. 437, § 44.

That section is as follows: "A stockholder in any corporation which shall have duly voted to sell, lease or exchange all its property and assets or to change the nature of its business in accordance with the provisions of section forty, who, at the meeting of stockholders, has voted against such action may, within thirty days after the date of said meeting, make a demand in writing upon the corporation for payment for his stock. If the corporation and the stockholder cannot agree upon the value of the stock at the date of such sale, lease, exchange or change, such value shall be ascertained by three disinterested persons, one of whom shall be named by the stockholder, another by the corporation and the third by the two thus chosen. The finding of the appraisers shall be final, and if their award is not paid by the corporation within thirty days after it is made, it may be recovered by the stockholder from the corporation in an action of contract. Upon payment by the corpora-

tion to the stockholder of the agreed or awarded price of his stock, the stockholder shall forthwith transfer and assign the stock certificates held by him at, and in accordance with, the request of the corporation."

The cases were consolidated and were heard together by *Braley,* J. He found, among other facts, the following:

The purposes of the corporation since its incorporation in 1864 were "the quarrying and preparing for the market of stone in the towns of Rockport and Gloucester in the County of Essex and Commonwealth of Massachusetts, and for selling the same."

At a meeting of the stockholders of the defendant on November 6, 1914, Mary P. Teele alone voting in opposition, the purposes of the corporation were changed to read as follows:

. "The purposes for which said corporation is established are to quarry stone and prepare the same for market, to buy, sell and deal in the same; to acquire, own or lease any lands containing stone, or other lands, for any purposes of the Company; to enter into and carry out contracts for the construction, alteration and repairing of all kinds of structures, including buildings, roads, docks, breakwaters, sea walls, aqueducts, canals and other water ways, so far as said contracts may be necessary or advantageous for placing in any such structures stone quarried or prepared by the Company; to lay out and construct railroads, railways, telephone and telegraph lines, and to construct, equip, purchase, sell, own or lease vessels of every nature and description, so far as such railroads, railways, lines and vessels may be necessary and appurtenant to any purposes of the Company; and as incidental to the other purposes of the Company to buy, sell, and deal in, general merchandise, and hold, purchase, or otherwise acquire, and sell or otherwise dispose of, shares of the capital stock and bonds or other securities of other corporations, and to exercise all the rights of ownership thereof, including the right of voting; to do all and everything necessary or convenient for the accomplishment of any of the purposes or objects or powers above mentioned or incidental thereto.

"The Corporation is to have the power to conduct its business both within and without the Commonwealth, and may have and maintain such offices as may be necessary therefor."

On November 10, 1914, the plaintiff made a demand upon the defendant in writing to make payment for her stock, which it re-

fused. The plaintiff then, on or about December 8, 1914, appointed an appraiser in accordance with the statute and duly notified the defendant. The defendant, however, refused to appoint an appraiser to fix the value of the plaintiff's shares of stock, and refused to take any action in the premises.

Since its organization the corporation frequently had bought and sold paving blocks and other forms of granite, which, on account of form, color, quality, or for other reasons, could not be furnished from its own quarries; frequently had leased and purchased lands containing stone, for the purposes of the company; had entered into and carried out contracts for the construction, alteration and repair of different structures, including roads, docks, breakwaters, and sea walls, in so far as said contracts were advantageous for placing in such structures, together with other materials necessary for their construction, the stone quarried or prepared by the company; from 1887 to the present time had built numerous lines of railroad for the purpose of connecting different parts of its various quarries, and also had built temporary lines of railroad for the purpose of delivering stone where delivery by water or by other ways had been found impracticable; also had built and maintained telephone and telegraph lines for the purpose of connecting various parts of its plant; also had owned and maintained, purchased and sold, constructed, built, and repaired, vessels of every nature and description used by it for the purpose of transporting stone and constructing sea walls and similar structures, having owned and operated a fleet of sloops, schooners, barges, tugs, exceeding twenty in number; had bought, sold and dealt in general merchandise at a general store maintained by the company for the convenience and advantage of its employees and for the profit of the company; at various times had acquired by purchase, or taken for indebtedness or held for security and sold and disposed of, shares of the capital stock and bonds or other securities of other corporations in connection with the business of the corporation.

All of the foregoing transactions were authorized by the directors and stockholders, to whom reports of the transactions were submitted each year, of which full statements appeared in the annual reports.

Mary P. Teele was represented by her attorney at some of these

meetings and received during her ownership dividends from time to time and made no protest regarding the business operations of the company. Her husband during his life acted as attorney for the corporation and was informed of all of its transactions during the time, and advised and assisted in the contracts for the building of various structures and the acquisition of various parcels of real and personal property and the exercise of all the other powers claimed by the corporation. But whether the information which he thus obtained was communicated to his wife did not appear.

It also appeared that, after the institution of these proceedings, Mary P. Teele received and cashed a check for a dividend upon her shares of stock in the defendant. The single justice found that, owing to the circumstances of her age and health, she did not thereby waive her rights as stated in these proceedings.

After the hearing before the single justice Mary P. Teele died and Arthur P. Teele, the executor of her will, was admitted to prosecute the case in her stead.

At the request of the parties the single justice reported the cases on the pleadings and the findings of fact for determination by the full court.

*F. L. Simpson,* (*G. E. Richardson* with him,) for the plaintiff.

*F. H. Tarr,* for the defendant.

RUGG, C. J. These two proceedings, one a suit in equity and the other a petition for a writ of mandamus, are brought by the plaintiff as a stockholder in the defendant corporation to compel compliance by it with the provisions of St. 1903, c. 437, § 44, on the ground that the defendant corporation has voted "to change the nature of its business."

The purposes for which the defendant was incorporated in 1864 were "The quarrying and preparing for the market of stone in the towns of Rockport and Gloucester in the county of Essex and Commonwealth of Massachusetts, and for selling the same." On November 6, 1914, in accordance with St. 1903, c. 437, § 44, its stockholders duly adopted the amendment to its corporate purposes.

The principles of law by which to determine whether acts and conduct are within or without the bounds of the power of a corporation have been the subject of adjudication and are not unfamiliar. A corporation has power to do only such business as it is authorized to do by its charter and no other. A corporation

cannot usurp functions not granted to it, nor stretch its lawful franchises beyond the limits of their reasonable intendment. It cannot engage in matters foreign to the objects for which it was incorporated. Its main business must be confined to those operations which appertain to the general purposes for which it was organized and which are defined in its charter. It is not clothed with all the capacities of a natural person or of an ordinary partnership. It is restricted to such as are conferred by its grant of the right to exist. Its lawful business may not vary materially from the objects for which it was created. It may, however, enter into contracts and engage in operations which, although not expressly nominated in its charter, are reasonably incident to its objects and subsidiary to its chief purpose. Whatever transactions are fairly incidental or auxiliary to the main business of the corporation and necessary or expedient in the protection, care and management of its property, may be undertaken by the corporation and be within the scope of its corporate powers. *Brown* v. *Winnisimmet Co.* 11 Allen, 326. *Davis* v. *Old Colony Railroad,* 131 Mass. 258. *Hotchkin* v. *Third National Bank of Syracuse,* 219 Mass. 234. *Jacksonville, Mayport, Pablo Railway & Navigation Co.* v. *Hooper,* 160 U. S. 514, 524, 526. *Meredith* v. *New Jersey Zinc & Iron Co.* 14 Dick. 257; affirmed in 15 Dick. 445. *Woods Motor Vehicle Co.* v. *Brady,* 181 N. Y. 145, 153.

In the light of these principles a comparison may be made of the original powers of the defendant with those described in the amendment to them. The initial power of "quarrying and preparing for the market of stone" is enlarged to include buying, selling and dealing in the same, and to acquiring, owning or leasing lands containing stone or other lands. While doubtless it would be within the original power in case of emergency, or under exceptional or unusual circumstances, to purchase finished or other stone in order to fill its orders, *Lyndeborough Glass Co.* v. *Massachusetts Glass Co.* 111 Mass. 315, there would be great difficulty in holding that it might regularly and as a part of its recognized everyday business conduct a buying and selling of stone quarried or finished by others. That is plainly within the purview of the amendment. The general contracting for the construction, alteration and repair of all kinds of structures, including buildings, docks, sea walls, breakwaters and canals, is a comprehensive

statement of powers respecting a department of industry which hardly could be described rightly as merely ancillary to the main business of quarrying and finishing stone for market. The circumstance that such contracts can be entered into only so far as "may be necessary or advantageous for placing in such structures stone quarried or prepared by the Company" is at most an exceedingly elastic limitation upon the broad power previously stated. It well may be that the nature of present conditions of trade is such that the contracting business may be profitably joined with that of quarrying and finishing stone. But that factor does not embrace the one as simply subsidiary to the other, or prevent the combination of the two from being a change from one. The construction of railroad, telephone and telegraph lines on its own estates, if necessary for the conduct of the principal business of quarrying and finishing, doubtless might be found to be incidental to it. But the same can scarcely be said respecting the power "to construct, equip, purchase, sell, own or lease vessels of every nature and description" so far as necessary for the purposes of the company. Navigation upon the high seas with every kind of craft, for the purpose of delivering its product, cannot with any due weighing of words and ideas be considered as incidental to the business of quarrying stone any more than it can be similarly regarded as to any other kind of manufacture or trade. The right to buy and sell shares of capital stock, bonds and securities of other corporations, and to carry on the business of dealing in general merchandise, seems to extend outside the ambit of quarrying. *Williams* v. *Johnson,* 208 Mass. 544. *Gloucester Water Supply Co.* v. *Gloucester,* 179 Mass. 365, 379. The power to conduct its business in places outside this Commonwealth, where it would not be under the protection of our laws, tends to disclose a purpose to alter the kind as well as to expand the amount of the business to be carried on.

Whatever may be said as to some of these new elements introduced into the chartered functions of the defendant by the amendment, if they stood alone, the collective effect of all of them is to work a "change in the nature of its business" within the meaning of those words as used in our statute.

The plaintiff is not barred by estoppel or laches. The present proceeding does not seek relief from acts to which the plaintiff has

given express or implied assent, but which are now averred to have been *ultra vires* the corporation. It rests wholly upon the privilege afforded by the statute. The plaintiff did not directly or indirectly assent to the vote of which complaint is now made. On the contrary, she opposed in the stockholders' meeting the vote amending the statement of corporate purposes and since has consistently asserted her rights under the statute. Because she may have profited by some of the acts of the defendant, now included in the amendment, before the vote was passed, does not bar her from enforcing the rights conferred by the statute growing out of that vote.

The bill in equity is the appropriate remedy. While relief by mandamus has been carried rather far in this Commonwealth, *Longyear* v. *Hardman*, 219 Mass. 405, 406, it is not adapted to the situation here presented. It is conceivable that in some instances injunction might be necessary. The flexibility of equity is better adapted to the wrong of which complaint is made and to effectuate the kind of relief which it is the purpose of the statute to confer upon the objecting stockholder, although perhaps no case exactly like this may be found among our decisions. See *New England Mutual Life Ins. Co.* v. *Phillips*, 141 Mass. 535; *Haupt* v. *Rogers*, 170 Mass. 71; *Gould's Case*, 215 Mass. 480.

An interlocutory decree may be entered for the plaintiff in the bill in equity according to the second prayer, directing the appointment of an appraiser by the defendant. Upon the finding of the appraisers being made, final decree may be entered for the amount by them ascertained, with costs. The petition for the writ of mandamus may be dismissed.

*So ordered.*