FLITNER-ATWOOD COMPANY *vs.* FIDELITY TRUST COMPANY.

Suffolk. March 21, 1924. — May 23, 1924.

Present: RUGG, C.J., BRALEY, CROSBY, CARROLL, & WAIT, JJ.

*Agency*, Existence of relation. *Contract*, Construction, Validity. *Corporation*, Ultra vires contract. *Trust Company*.

An agreement in writing between a trust company which did not have a trust or a savings department, mortgagee of a steamship, and a corporation that owned the steamship, and an individual, provided in substance as follows: The owner gave to the individual exclusive possession, management, control and operation of the steamship until, from profits realized, certain liens and claims and the trust company's mortgage and all obligations to it were paid. The individual was to receive a commission on gross receipts and, after paying freight, was to pay the trust company the net profits accompanied by an itemized statement of receipts and disbursements as soon as possible after each trip. The trust company was to furnish copies of the vouchers or returns to the owner, as well as, from time to time, statements of such disbursements and payments as it was authorized to make. After all claims and liens were satisfied, the trust company was to retain out of the receipts the sum of $50,000 in addition to the amount due on the mortgage, and, when all payments had been made, the individual was to return the steamship to the owner. If the individual died or became disabled, or any other reason " which seemed to it most advisable " required such action, the trust company reserved the right to appoint in writing some one in his place, and, on such appointment being made, the appointee was substituted for the individual under the agreement. In an action by a merchant against the trust company for supplies furnished for the steamship on the order of the individual, it was *held*, that

(1) The agreement was plain and unambiguous, and extrinsic evidence was not admissible to vary its terms;

(2) By the provisions of the agreement, the individual was constituted an agent for the trust company in the ordering of the supplies;

(3) The enterprise included in the agreement was neither the taking of additional security, nor the protection of security already held, was beyond the powers given by G. L. c. 172, §§ 31, 33, 34, and was void;

(4) A judgment should be entered for the defendant.

CONTRACT for the price of merchandise in the nature of supplies furnished by the plaintiff to the steamship " Henry M. Whitney." Writ dated September 19, 1921.

In the Superior Court, the action was tried before *Fosdick*, J. Material evidence is described in the opinion. At the

close of the evidence, the trial judge ordered a verdict for the defendant and reported the action to this court on his rulings on the admission and exclusion of evidence, described in the opinion, and on the order directing the jury to return a verdict for the defendant, the parties agreeing that, if the exclusion of any evidence excepted to was error, the evidence so offered was to be considered by this court as if it had been admitted, and that, if upon such evidence and upon other evidence in the case which was admitted without exception, the order directing the return of the verdict was right, judgment was to be entered on the verdict; but, if the order directing the verdict was error, judgment was to be entered for the plaintiff for $7,653.23 with interest from November 19, 1919.

*J. E. McConnell,* (*J. W. Corcoran* with him,) for the plaintiff.

*C. F. Rowley,* (*E. G. Fisher* with him,) for the defendant.

BRALEY, J. The action is in contract on an account annexed to recover for merchandise furnished in 1919 to the steamship Henry M. Whitney, and, the amount due, if anything was due, having been uncontested, the first question was, whether Arthur L. Crowley, who dealt with the plaintiff, was authorized to bind the defendant.

The Whitney Steamship Corporation owned the Henry M. Whitney, and the Acme Corporation owned the steamship James S. Whitney, on which vessels the defendant held overdue mortgages, subject to certain liens and claims having priority. The principal of the mortgages with accrued interest and certain charges and disbursements made by the defendant being overdue, the Whitney Corporation, the Acme Corporation and the defendant trust company on June 30, 1919, entered into a contract in writing with Crowley, the material portions of which relating to the Henry M. Whitney are as follows: The Whitney Corporation delivered to Crowley the exclusive possession, management, control and operation of the Henry M. Whitney until, from the profits thereby derived, the disputed liens and claims should be paid, and defendant's mortgage with all obligations, disbursements and obligations incurred by the defendant

were discharged. . Crowley was to receive a commission of five percentum on the gross receipts, and after collection of freights, he was to pay to the defendant the net profits accompanied by an itemized statement of receipts and disbursements as soon as possible after each trip. The trust company was to furnish copies of the vouchers or returns to the Whitney Corporation, as well as statements from time to time of its disbursements and payments that it was authorized to pay. After all claims and liens were satisfied, the defendant was to retain in addition to the amount due on the mortgage the sum of $50,000 out of the receipts, and, when all payments had been made, Crowley was to return the vessel to the Whitney Corporation. If Crowley died, or became disabled, or for any other reason " which seemed to it most advisable," the defendant reserved the right to appoint in writing some one in his place, and, on such appointment being made, the appointee was substituted for Crowley under the terms of the agreement.

The trust company was closed by the bank commissioner in September, 1922, and from the date of the agreement Crowley, who also was a director of the defendant, had control and operated the vessel until April 6, 1920, when he retired, because fault was found by the owner with his management, and the vessel was returned to the Whitney Corporation.

The vote of the defendant's executive committee, adopted April 10, 1918, which authorized the vice-president to act in his discretion for the defendant " with reference to the mortgages held by this company on the steamships ' H. M. Whitney ' and ' James S. Whitney,' and in the name of this company institute such proceedings at law or in equity, or both, with reference to certain vessels and the interests of this corporation therein or thereto, as he may deem advisable," and the record of the executive committee of May 6, 1919, showing a report on the standing of the Acme & Whitney S. S. Company mortgage loans made by the defendant, were properly excluded to the extent shown by the record.

The plaintiff's debt was contracted with Crowley acting

under a plain and unambiguous instrument which defined his powers, and, independently of the contract, there is no evidence that Crowley was authorized to act for the defendant. The defendant could not be found, as the plaintiff contends, to have operated the vessel on its sole account as mortgagee. It had not taken possession for the purpose of foreclosure, but had joined with the mortgagors in a plan for their mutual or joint benefit. *Brooks* v. *Bondsey,* 17 Pick. 441. *Howard* v. *Odell,* 1 Allen, 85, 87. The statements of Crowley rendered to, and accepted by the defendant, designates him as agent. The same result follows, even if, as the plaintiff further contends, a mortgage of a ship at common law as between the mortgagor and mortgagee vests the property in the mortgagee. *Esson* v. *Tarbell,* 9 Cush. 407, 411. *Howard* v. *Odell, supra.* We find no reversible error in the exclusion of evidence offered by the plaintiff, and the relations of the parties are to be ascertained from the terms of the contract. *Goyette* v. *G. V. Watson Co.* 245 Mass. 577, 588, 589.

It appears from Crowley's uncontroverted evidence, that, upon assuming his duties, " the ship's supplies were purchased by him by means of requisitions upon whatever ship chandler they wanted supplies from; the requisitions would be sent from his office and the receipts would come attached to the bill rendered; with the money received from the operation of the ship, he paid the bills as far as it went and when he had no money left from the receipts, he got money from the trust company; that he paid none of the bills . . . with his own money; that he kept accounts of the receipts and expenses of the ship, and that all his books, vouchers, bills and everything were turned over to Rogers and Webb by the request of the bank commissioner; that from time to time while he operated the ship he had to get money to pay the bills and would get it from the trust company; that, when the plaintiff was asking for payment of its bill he had no money to pay it, and got money from the trust company from which he paid the plaintiff $3,000 on account; that when he received money from the trust company he gave the trust company notes for the amount, signed ' Steamship

H. M. Whitney, A. L. Crowley, Agent.' " And the plaintiff put in evidence fifteen notes of this description aggregating $188,915.15. It was of no consequence what the defendant's vice-president said to Crowley as to Crowley's personal responsibility, when the contract was executed. But the admission of this evidence did not harm the defendant. The jury could find, that it knew of the way in which Crowley was managing and operating the Henry M. Whitney to which no objection was made. It advanced money whenever called for, and the contract having made him the defendant's agent, the plaintiff's claim was clearly enforceable, if the defence of *ultra vires* had not been relied on at the trial.

It is insisted by the defendant, that it had no legal authority to make the contract under its corporate powers, or, in other words, that, the contract being outside of the object of its creation and therefore beyond the powers conferred on it by the Legislature, is void and of no legal effect. *Nims* v. *Mount Hermon Boys' School*, 160 Mass. 177, 179. *Teele* v. *Rockport Granite Co.* 224 Mass. 20, 25. *California Bank* v. *Kennedy*, 167 U. S. 362, 367. *First National Bank of Ottawa* v. *Converse*, 200 U. S. 438. See note 70 Am. St. Rep. 156. The question for decision is not the question whether the defendant would have been liable in an action of tort for neglect of some duty owed to a passenger who had paid for, and been accepted for carriage on the vessel, as in *Nims* v. *Mount Hermon Boys' School, supra.* But it was, whether the defendant is liable for the balance due on a contract for supplies, made by its agent when operating the vessel. The date of the organization of the defendant corporation does not appear. But both parties have referred to G. L. c. 172, as prescribing the powers and regulating the business of trust companies in this Commonwealth, which is a codification of the laws in force when the contract was made. The record does not show that the defendant has established a trust department or a savings department as provided for in G. L. c. 172, §§ 49–72. The defendant's powers in so far as material on the record are conferred by §§ 31, 33, 34, which read as follows: " Such corporation may receive on deposit,

storage or otherwise, money, government securities, stocks, bonds, coin, jewelry, plate, valuable papers and documents, evidences of debt, and other property of any kind, upon terms or conditions to be agreed upon, and at the request of the depositor may collect and disburse the interest or income, if any, upon said property received on deposit and collect and disburse the principal of such of said property as produces interest or income when it becomes due, upon terms to be prescribed by the corporation. Such deposits shall be general deposits, and may be made by corporations and persons acting individually or in any fiduciary capacity. Such corporation shall not give collateral or other security for a deposit of money received under this section, except that the corporation may make such a deposit of securities as may be required by the laws of the United States or the rules and regulations of the trustees of the postal savings system as security for deposits of postal savings funds made with such corporation and may give such collateral or other security for deposits of public or other funds as may be required by any public authority making such deposits or controlling the terms upon which they may be made."

" Such corporation may, subject to the limitations of the following section, advance money or credits, whether capital or general deposits, on real estate situated in the Commonwealth and on personal security, on terms to be agreed upon, and also invest its money or credits, whether capital or general deposits, in the stocks, bonds or other evidences of indebtedness of corporations or of governments, both foreign and domestic.

" No such corporation shall advance money or credits upon notes secured by deed of trust or by mortgage upon farms or agricultural or unimproved land outside of the Commonwealth, except upon land situated in the New England States or the State of New York, or invest in or make loans on the bonds or other securities of a company negotiating or dealing in such notes so secured or in such mortgages."

The defendant's corporate powers as thus defined preclude it from using or expending capital, credits, or deposits, in the

management and operation of maritime adventures as described and defined in the contract. The defendant undoubtedly could have foreclosed its mortgage, and for the protection of its security have acquired any outstanding prior liens or incumbrances on the vessel, and also if the mortgage had so provided, could have become the purchaser and owner at the sale. It would then, as counsel for the plaintiff urges, have exercised a power for the protection of its security, which was incidental to the making of the original loan. *Hotchkin* v. *Third National Bank of Syracuse,* 219 Mass. 234. The enterprise however was neither the taking of additional security, nor the protection of security already held. It was the direct assumption of liabilities which might entail loss on its depositors, and for the payment of which it could not subject its assets.

We are of opinion for the reasons stated, that the governing statute is decisive, and under the terms of the report the entry must be,

*Judgment for the defendant on the verdict.*